Filed 10/27/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B269709 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No.PA084106) |
| v. | |
| CHRISTIAN AGUILAR, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hilleri G. Merritt, Judge. Affirmed.

Joy A. Maulitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Christian Aguilar pled no contest to one count of felony vandalism (Pen. Code, § 594, subd. (a)).[1]  The trial court ordered defendant to pay restitution in the amount of $475 to the City of Los Angeles, which paid a contractor to remove the graffiti defendant admitted painting.  Defendant now contends the restitution order must be vacated because it lacks a factual nexus to the damage caused by his conduct.  We disagree and affirm.

## BACKGROUND

In a felony complaint filed August 17, 2015, the District Attorney for the County of Los Angeles alleged that defendant caused damage exceeding $400 by painting graffiti on a wall belonging to the Foothill Childhood Development Center, Inc. (§ 594, subd. (a).)  Defendant pled no contest to the charge, thereby admitting that he caused damage in excess of $400.

At the subsequent restitution hearing, the prosecution called as its witness Gerry Valido, a graffiti abatement coordinator with the City of Los Angeles Department of Public Works.  Valido testified that the graffiti at issue "was profane in nature and anti-police in nature, and it was sprayed in black spray paint across the length of the wall" of a day care center.  The graffiti covered an area that was approximately 500 square feet: approximately 80 feet long and five or six feet high.  Three photographs of the graffiti were admitted into evidence "by reference only."  The day care center notified its city council member about the graffiti, and the city council member in turn contacted one of the City's graffiti removal contractors.  The contractor, Northeast Graffiti Busters, abated the graffiti. Valido prepared an invoice for costs the City incurred as a result: $475.

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

The invoice was admitted into evidence "by reference only."

Valido testified that he arrived at a cost of $475 by "utilizing the cost sheet that we use for these types of cases." He explained that $475 "is the flat rate for private property graffiti removal, and the costs are taken from a graffiti removal cost sheet which lists different surfaces and the costs of graffiti removal from those particular surfaces." Under this flat rate system, as the prosecutor put it, a vandal who "put[s] one sentence on a wall . . . might get screwed," while someone who vandalizes "an 80-foot wall . . . [will] benefit from that." According to Valido, the fixed price factored in "the costs for vehicles and maintenance, graffiti removal equipment, the cost of the personnel it takes to remove the graffiti, city administrative costs, [and] costs of insurance." That is, the rate of $475 "reflect[s] the cost of what it takes to run a city-wide graffiti removal program." Law enforcement investigative costs were not included.

Valido also opined that, based on his experience, $475 was a "fair price" for the abatement of this particular graffiti. "Based on the size and the extent of the graffiti, it took a good deal of paint to cover that up. Plus the manpower, and the fact that it was profane graffiti, it had to be done quickly."

On cross-examination, Valido conceded that the City does not pay its graffiti removal contractors on a per-incident basis. Instead, the contractors "receive an annual contract amount," and "get a 12th of their annual payment every month." Thus, Northeast Graffiti Busters did not receive $475 from the City for cleaning up appellant's graffiti. The monthly amount the contractor received was not dependent upon the number or complexity of the abatements it performed each month. Valido

3

did not know the cost of the paint used to cover the graffiti, or the number of hours spent, or the hourly rate that was paid to the person or persons who actually performed the work. Valido also did not know the City's annual budget for graffiti abatement.

Defense counsel argued that the testimony Valido provided was insufficient to support an award of restitution under *Luis M. v. Superior Court* (2014) 59 Cal.4th 300 (*Luis M.*). Counsel contended that *Luis M.* "does not permit a cost sheet analysis" like the one Valido did, because such analyses have "no actual relationship to the graffiti that is removed." She asserted that Valido properly could have tabulated the removal costs by tallying the exact costs of paint and labor, or by dividing the City's annual budget by the annual number of graffiti incidents and assessing appellant the cost of one incident. She also noted that, in her experience, "when a private individual does the repairs instead of the graffiti abatement program, we find repairs cost $100, $200, instead of the $475 in this case."

The prosecutor argued that Valido's testimony was adequate to support a restitution order under *Luis M.* He pointed out that the trial court examined photographs of the graffiti to assess its extent and scope, and that Valido had opined that $475 was a reasonable amount to abate the graffiti. He requested that the court order restitution in that amount, payable to the City.

The court agreed with the prosecutor. It stated that it looked "specifically at the holding of the California Supreme Court in *LuisM.*, and their amendment does allow recovery." The court continued, "There was extensive damage as shown, and the court will note that if you get anyone to paint anything nowadays, good luck getting anything under $500. I think it is

4

perfectly reasonable, and there is a nexus.  That will be the order."

Appellant timely appealed.

## DISCUSSION

Section 1202.4 requires the trial court to order full victim restitution "in every case in which a victim has suffered economic loss as a result of the defendant's conduct," "unless it finds compelling and extraordinary reasons for not doing so and states them on the record."  (§ 1202.4, subd. (f); see also *People v. Giordano* (2007) 42 Cal.4th 644, 652.)  A governmental entity "that is responsible for repairing, replacing, or restoring public or privately owned property that has been defaced with graffiti or other inscribed material . . . and that has sustained an economic loss as a result of a violation of Section 594 . . ." is a "victim" for purposes of section 1202.4.  (§ 1202.4, subd. (k)(5).)  The amount of restitution must be "based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).)  It also must reflect "economic loss incurred as a result of the defendant's criminal conduct," such as "the actual cost of repairing the property when repair is possible." (§ 1202.4, subd. (f)(3)(A).)

"The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution." (§ 1202.4, subd. (f)(1).)  At that hearing, the prosecution bears the initial burden of making a prima facie showing of the victim's economic loss.  Once that showing is made, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.  (*People v. Millard* (2009) 175 Cal.App.4th 7, 26; *People v. Santori* (2015) 243 Cal.App.4th 122, 126 (*Santori*).)  Section 1202.4 does not by its terms require any

5

particular type of evidence. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542 (*Gemelli*).) The standard of proof is preponderance of the evidence. (*Ibid.*)

On appeal, we review the trial court's order for abuse of discretion. (*Gemelli*, *supra*, 161 Cal.App.4th at p. 1542.) No abuse of discretion occurs if the restitution order is supported by a rational and factual basis. (*Ibid.*) We reverse only if the trial court's order is arbitrary or capricious. (*Ibid.*)

Defendant contends the trial court abused its discretion by violating the teachings of *Luis M.*, a case involving a juvenile defendant which is relevant here because of the substantial similarities between section 1202.4 and the restitution statute for juveniles, Welfare & Institutions Code section 730.6. (*Santori*, *supra*, 243 Cal.App.4th at p. 126.) In *Luis M.*, a minor defaced six locations in the City of Lancaster with nine acts of graffiti. (*Luis M.*, *supra*, 59 Cal.4th at p. 303.) At his restitution hearing, a crime prevention officer used a five-year-old cost model to estimate the City's annual graffiti abatement costs; the model included labor and material costs for both investigation and removal of graffiti. (*Id.* at p. 304.) She compared that cost model to the City's annual expenditures and concluded that the City's average outlay per graffiti incident was $431.32. She multiplied that figure by defendant's nine instances of graffiti to arrive at a total loss amount of $3,881.88. (*Ibid.*) The officer "did not produce photographs or otherwise describe [defendant's] graffiti except to note that it involved a traffic arrow sign and several electrical boxes," and offered "no information about the actual abatement costs related to Luis's conduct." (*Ibid.*) The trial court ordered restitution in the amount of $3,881.88,based on the officer's testimony. (*Ibid.*) The Court of Appeal issued a writ

6

vacating the order, and the Supreme Court affirmed. (*Id.* at p. 303.)

The Supreme Court concluded the order "was not based on sufficient evidence that the amount of claimed loss was a result of Luis's conduct." (*Luis M.*, *supra*, 59 Cal.4th at p. 303.) It explained that the general restitution statute applicable to juvenile offenders, Welfare & Institutions Code section 730.6, which is "'parallel'" to section 1202.4, limits restitution to "'economic losses incurred *as a result of the minor's conduct*,'" such as "'the *actual cost* of repairing the property when repair is possible.'" (*Id.* at pp. 304, 305, emphases in original.) The award may include "the materials, equipment, and labor costs incurred for remediation," as well as "[p]reexisting expenditures, such as salaried employees and equipment purchases, . . . provided those costs can be fairly apportioned on a pro rata basis to the minor's conduct." (*Id.* at p. 309.) It may not include law enforcement investigative costs. (*Id.* at p. 305.) A trial court awarding restitution under Welfare & Institutions Code section 730.6 "need not ascertain the exact dollar amount of the City's losses," and "retains broad discretion . . . to estimate the material, equipment, and labor costs necessary to repair the damage caused by a discrete act of graffiti," but its calculation "must have some factual nexus to the damage caused by the minor's conduct." (*Id.* at pp. 309, 310.)

Defendant argues that the trial court's order did not comply with the requirements of Welfare & Institutions Code section 730.6 because the court "based its estimate on an *average of all costs* of graffiti cleanup rather than a rational estimate of costs occasioned by Luis's conduct." (*Luis. M.*, *supra*, 59 Cal.4th at p. 309, emphasis in original.) The Supreme Court noted there was

7

"no evidence of the size or type of Luis's graffiti," and "no evidence about the materials, equipment, and labor required to remove it." (*Ibid*.) By way of example, the Court observed that it could not determine "if the City painted over a small area or used more expensive equipment to restore the property's surface." (*Ibid*.) The Court also noted that the trial court's order included law enforcement investigative costs, which are not recoverable under Welfare & Institutions Code section 730.6. (*Id*. at p. 310.)[2]

Defendant argues that the "evidence provided by the City in this case was even less substantial than that found lacking in *Luis M*." He asserts there was no evidence apportioning the costs of labor or materials, and no evidence of the City's annual graffiti removal budget or the number of incidents it must abate each year. He further argues that the photographs of the graffiti in this case "do not support a calculation of $475 without additional evidence." In his view, "the City must also provide an estimate of average cost per square foot to paint over the graffiti, or alternatively, the City could provide business records reflecting time and materials."

---

[2] The *Luis M*. Court also concluded the restitution order did not comply with a special restitution scheme for juvenile offenders, the Graffiti Removal and Damage Recovery Program (Welf. & Inst. Code, § 742.10, et seq.). (*Luis M*., *supra*, 59 Cal.4th at pp. 305-306.) That program "authorizes a city or county to calculate and recover restitution based on average costs rather than requiring individualized proof under the general provisions of [Welfare & Institutions Code] section 730.6." (*Id*. at p. 306.) The City in *Luis M*. could not take advantage of the program because it had not enacted the required ordinances. We do not address this portion of *Luis M*. further because defendant is not a minor.

8

*Luis M.* does not bear the weight defendant accords it.  The Supreme Court did not hold that photographs of graffiti *must* be accompanied by "an estimate of average cost per square foot to pain over the graffiti or some other measure."  The Court held that "the trial court retains broad discretion  . . . to estimate the material, equipment, and labor costs necessary to repair the damage caused by a discrete act of graffiti." (*Luis M.*, *supra*, 59 Cal.4th at p. 310.)  The Court explained that "a witness familiar with graffiti abatement" could use photographs or other evidence of "the size, extent, and type of graffiti involved" to "estimate the average cost per square foot or other measure to paint over or otherwise restore the defaced surfaces.  Alternatively, business records reflecting time and materials might provide a rational basis for estimating costs." (*Ibid.*)  This language does not require the use of any one method or measure.  Thus, the absence of business records or a specific estimate of "average cost per square foot" does not render the prosecution's showing insufficient.

This case is analogous to *Santori*, *supra*, 243 Cal.App.4th 122.  There, a crime prevention officer testified that it took the City of Los Angeles an average of 100 minutes to remove a piece of graffiti.  She examined photographs of an adult defendant's 32 instances of graffiti and concluded that 100 minutes was a reasonable estimate for each incident, even though some may have taken more time to remove and others less; she did not know the actual number of hours the City spent abating defendant's graffiti.  The officer considered the costs of a cleanup crew, administrative costs, her salary, investigative costs and a graffiti-tracking computer program to arrive at a per-minute graffiti abatement cost. (*Id.* at p. 125.)  She multiplied the 32

9

incidents by the 100 minutes by the per minute cost to arrive at an estimate. After the trial court deducted the portion attributable to investigative costs, it relied on the officer's estimate to award the City $18,878.23 in restitution. (*Ibid.*)

The defendant contended that the evidence underlying the order was insufficient to establish the "factual nexus" required by *Luis M.* (*Santori, supra*, 243 Cal.App.4th at p. 126.) The *Santori* court disagreed and concluded that the witness "followed the . . . mandate in *Luis M.* She was familiar with graffiti abatement and established the average cost per minute to restore the defaced surfaces. . . . In contrast to *Luis M.*, here the crime prevention officer considered the photographs depicting defendant's graffiti when she calculated the cost to restore the defaced surfaces. [Her] opinion was based on defendant's graffiti, not just an average for removal of the city's graffiti." (*Id.* at p. 127.)

The analogy to *Santori* is not perfect: Valido did not calculate a per-minute graffiti removal cost, and he did not provide a time estimate for remediation of defendant's graffiti. However, Valido "considered the photographs depicting defendant's graffiti" and, given his experience, opined that the flat fee of $475 was a "fair price" to abate defendant's graffiti. He considered the large size and extent of the graffiti, as well as the necessity for an expedited removal, given its profane content and location on a day care center, and factored the costs of both paint and manpower into his opinion as well. This testimony provided a factual nexus to defendant's graffiti. In substance, it was akin to the *Santori* witness's testimony that 100 minutes was a "reasonable estimate" of the time it would take to remove each piece of graffiti in that case, and that 100 minutes of work would

cost a specific dollar amount.

Defense counsel's assertion that the repairs could have been accomplished for "$100, $200, instead of the $475" was not supported by any evidence. Accordingly, it was not sufficient to overcome the prosecution's prima facie case, particularly in light of defendant's no contest plea to causing more than $400 in damage.

The trial court did not violate *Luis M.* or otherwise abuse its discretion in ordering defendant to pay $475 in restitution to the City of Los Angeles.

## DISPOSITION

The restitution order is affirmed.

## CERTIFIED FOR PUBLICATION


COLLINS, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.

11