Filed 3/6/23  P. v. Martinez CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEEANNA DODSON MARTINEZ,<br><br>    Defendant and Appellant. | H049732<br>(Santa Clara County<br> Super. Ct. No. C1808369) |

Defendant Leeanna Dodson Martinez pleaded no contest to three counts of grand theft and three counts of embezzlement committed against three businesses for which she had provided bookkeeping services.  The trial court sentenced Martinez to six years and four months in state prison.

On appeal, Martinez contends that this matter should be remanded based on an amendment made after her sentencing to Penal Code section 1170 (see Assembly Bill No. 124 (2021-2022 Reg. Sess.)) and because the trial court erred in failing to stay the terms imposed on certain counts pursuant to Penal Code section 654.[1]  In addition, Martinez asserts that a more-than $2.5 million restitution order issued by the trial court

---

[1] Unspecified statutory references are to the Penal Code.

violated her constitutional rights because it was imposed without a jury finding or adequate due process protections and amounted to an excessive fine.

For the reasons described below, we vacate Martinez's sentence and remand the matter for resentencing. We reject Martinez's claim challenging the restitution order.

## I. FACTS AND PROCEDURAL BACKGROUND[2]

Between January l, 2006, and April 30, 2018, Martinez provided bookkeeping services to three companies, Naviscent LLC (Naviscent) (owned by George P.), Otte Construction (owned by Michael O.) and Innovative Management Design (IMD) (owned by Mark S.).[3] According to the probation report, Mark S. discovered that Martinez had "used company credit cards and wrote company checks to herself, created false accounting reports, 'padded' her billing hours to receive extra pay and failed to file several years of company taxes." Michael O. discovered that Martinez had embezzled funds from his company as well. George P. had recommended Martinez to Michael O., having known Martinez and used her services for years. After Michael O. notified George P. of Martinez's embezzlement from Otte Construction, George P. discovered that Martinez also had embezzled funds from Naviscent. Martinez admitted to George P. that "she embezzled funds, including writing checks to herself and altering invoices."

Michael O. agreed not to report Martinez to law enforcement in exchange for repayment of the embezzled funds. As stated in the probation report, "Martinez breached their agreement, filed for bankruptcy and planned to sell her home to move out of the area. The embezzlement was subsequently reported to the District Attorney's Office. Mrs. Martinez was arrested and booked into the County Jail on February 7, 2019."

---

[2] Because Martinez entered a no contest plea, the facts recounted here are drawn from the probation officer's report prepared for her sentencing.

[3] We refer to the proprietors of the companies by their first names and the first letter of their last names to protect their privacy interests. (See Cal. Rules of Court, rule 8.90(b)(4).)

On April 24, 2019, the Santa Clara County District Attorney filed a first amended felony complaint (complaint) charging Martinez with three counts of grand theft (§ 487, subd. (b)(3); count 1 [Naviscent], count 3 [IMD], & count 5 [Otte Construction]) and three counts of embezzlement from each of the companies (§ 504; count 2 [Naviscent], count 4 [IMD], and 6 [Otte Construction]). The complaint alleged that all the offenses occurred "[o]n or about and between January 1, 2006 and April 30, 2018." As to counts 1 and 2, the complaint further alleged that the theft exceeded $100,000 (§ 1203.045 [presumptive probation ineligibility]) and that those counts involved a pattern of related felony conduct involving theft of more than $500,000 (§ 186.11, subd. (a)(1), (2) [aggravated white-collar crime allegation]).

At a change-of-plea hearing held on January 2, 2020, the trial court granted the prosecutor's request to amend counts 4 and 6 to allege the offenses as felonies (from their previous designation as misdemeanors). The prosecutor noted that these changes "would not affect [Martinez's] punishment" because counts 4 and 6 were subject to section 654. Martinez pleaded no contest to all counts in the complaint and admitted the allegations limiting her probation eligibility (§ 1203.045). Martinez's plea was an "open plea" to the court, entered with an understanding that the maximum sentence for the charges was eight years and eight months, and there were no promises or agreements regarding sentencing. Martinez did not admit the aggravated white-collar crime allegation at the plea hearing (§ 186.11, subd. (a)(1), (2)), and the court stated that the allegation would be submitted for its decision in a court trial at a subsequent restitution hearing. Furthermore, in the written plea form, Martinez initialed the following statement: "I understand the Court will order me to pay full restitution to any victim(s) for his/her/their losses."

On March 22, 2021,[4] the trial court held a contested restitution hearing. The court took evidence (including the testimony of two of the owners of the victim businesses, a

---

[4] Unless otherwise indicated, all dates were in 2021.

forensic accountant, and Martinez) and awarded restitution in the amount of $2,522,157.95 as follows: $842,359 for loss plus $1,078,634.73 for legal fees to Naviscent/George P.; $300,000 for loss plus $243,899.28 for legal fees to Otte Construction/Michael O.; and $57,264.94 for loss to IMD/Mark S. In addition, the court found the aggravated white-collar crime allegation true.

On May 24, Martinez's defense counsel filed a statement in mitigation for sentencing.

On July 21, the trial court held a sentencing hearing at which George P. and Michael O. presented statements about Martinez's crimes and their impact on their lives. The prosecutor urged the court to follow the recommendation of the probation department and sentence Martinez to six years and four months in prison. Defense counsel stated that Martinez had "struggle[d] . . . in an abusive marriage that she got out of. It took a lot out of her. She was afraid she was going to lose her house[;] that's how the thefts started." Counsel also said that Martinez "has suffered from anxiety and depression for many years" and "has many different medical issues as well as mental health issues as a result of this."

In accord with the probation department's recommendation, and without further explication, the trial court denied probation and imposed a total term of six years and four months in state prison, comprising two years for count 1, two years concurrent for count 2, eight months consecutive for count 3, two years concurrent for count 4, eight months consecutive for count 5, two years concurrent for count 6, and three years consecutive for the aggravated white-collar crime enhancement.[5] In addition, the court ordered direct victim restitution to the three companies in accord with its ruling at the restitution

---

[5] The sentencing triad for all counts was 16 months, two years, or three years. (See §§ 18, 487, 504.) The triad for the enhancement was two, three, or five years. (§ 186.11, subd. (a)(2).)

4

hearing:  (1) $1,920,993.73 to Naviscent; (2) $543,899.28 to Otte Construction; and (3) $57,264.94 to IMD.

On October 6, the trial court recalled Martinez's sentence pursuant to former section 1170, subdivision (d)(1).

On November 17, the trial court resentenced Martinez, imposing the same sentence that it had previously on July 21 (with updates to the applicable presentence credits).  The court again ordered direct victim restitution to the three companies in amounts identical to that it had previously ordered on July 21.

Martinez timely filed a notice of appeal from the judgment and did not request a certificate of probable cause.

## II.  DISCUSSION

A.  *Amended Section 1170, subdivision (b)*

At the time of Martinez's initial sentencing and resentencing in 2021, former section 1170 provided that the choice between sentencing a defendant to the lower, middle, or upper term "shall rest within the sound discretion of the court," with the trial court determining which term "best serves the interests of justice."  (Former § 1170, subd. (b).)  In "determining the appropriate term," the court could "consider the record in the case, the probation officer's report, other reports . . . and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing."  (*Ibid*.)

By contrast, current section 1170, subdivision (b)(1), directs the trial court to impose not more than the middle term of a sentencing triad unless certain circumstances exist.[6]  Additionally, current section 1170, subdivision (b)(6) (hereafter section

_____

[6] Section 1170, subdivision (b)(1), provides:  "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound

5

1170(b)(6)), provides in relevant part: "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. [¶] . . . [¶] (C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking." (Stats. 2021, ch. 695, § 5 [Assembly Bill No. 124; eff. Jan. 1, 2022]; Stats. 2021, ch. 731, § 1.3 [Senate Bill No. 567; eff. Jan. 1, 2022].)[7] Subdivision (b) states further that the trial court has discretion to impose a lower term even if there is no evidence of the circumstances listed in section 1170(b)(6). (§ 1170, subd. (b)(7); *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1096 (*Gerson*).)

Martinez contends that we should remand this case for resentencing given the postsentencing enactment of section 1170(b)(6), "which create[s] a presumption of the low term when, inter alia, psychological trauma is a contributing factor in the commission of the crime." Martinez asserts that section 1170(b)(6) applies retroactively to her nonfinal judgment. She further asserts that she "suffers from mental health issues" and "the record does not rule out the possibility that [her] mental health issues constitute psychological trauma that contributed to her offenses."

The Attorney General concedes that the recent legislative changes to section 1170, subdivision (b), apply retroactively to this case. We agree. (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038–1039; *People v. Garcia* (2022) 76 Cal.App.5th 887, 902;

discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)."

[7] We note that the Legislature recently amended section 1170 again, but the new amendments (effective January 1, 2023) do not change the provisions relevant to our analysis of Martinez's claim. (See Stats. 2022, Ch. 744, § 1 [Assembly Bill No. 960].)

*People v. Banner* (2022) 77 Cal.App.5th 226, 240 (*Banner*); *Gerson*, *supra*, 80 Cal.App.5th at p. 1096.)

Notwithstanding the applicability of section 1170(b)(6) here, the Attorney General contends that a remand for resentencing under that provision is unnecessary because "the record contains scant information of [Martinez]'s psychological difficulties, let alone any indication that they were connected to her offense." We reject this reading of the record.

Martinez is entitled to a remand for resentencing under section 1170(b)(6) " 'unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' [Citation.] This is because defendants are ' "entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court." ' [Citation.] A court that is not aware of the scope of its discretionary powers cannot exercise that 'informed discretion' any more than a court whose sentence may have been based on misinformation regarding a material aspect of the defendant's record." (*Gerson*, *supra*, 80 Cal.App.5th at p. 1096; see also *Banner*, *supra*, 77 Cal.App.5th at p. 242; *People v. Salazar* (2022) 80 Cal.App.5th 453, 463, review granted Oct. 12, 2022, S275788 [applying the " 'clearly indicate[s]' " standard but concluding that the record showed the trial court would not have imposed the low term had it been aware of its discretion under section 1170(b)(6)].)[8]

The record here does not clearly indicate that the trial court would have imposed middle-term sentences had section 1170(b)(6) been in effect. Under that subdivision, "psychological trauma based on mental illness may be a circumstance qualifying for the lower term presumption." (*Banner*, *supra*, 77 Cal.App.5th at p. 241.) The probation report prepared for Martinez's sentencing noted that she suffered from depression, was

_____

[8] When granting review in *Salazar*, our Supreme Court limited its review to the following question: "Did the Court of Appeal err by finding the record clearly indicates the trial court would not have imposed a low term sentence if it had been fully aware of its discretion under newly-added subdivision (b)(6) of Penal Code section 1170? (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)"

taking the medications Cymbalta and trazadone, and was receiving "[p]sych. therapy." The probation report also included Martinez's statement confirming that she "suffers from depression," "sees a therapist to help monitor her medication," and was taking Cymbalta for depression and "[t]razadone to help her sleep."

Additionally, the probation report stated the following about the aggravation and mitigation in this case, under rules 4.421 and 4.423 of the California Rules of Court: "[T]here are aggravating circumstances present, including the manner in which the crime was carried out indicates planning, sophistication and professionalism, the crime involved an actual taking or damage of great monetary value, and Mrs. Martinez took advantage of a position of trust or confidence to commit the offense. Two mitigating circumstances appear present, specifically, Mrs. Martinez has no prior record and entered an early plea."

In a statement in mitigation filed by Martinez's defense counsel for sentencing, counsel wrote: "Ms. Martinez has no criminal record whatsoever and this is not a crime of violence. Further, at the time of the initial taking, Ms. Martinez was in danger of losing her family home, she lived with an abusive husband and feared leaving him and she suffered from severe depression and anxiety. Additionally, she is suffering from several chronic medical issues." Counsel also attached two letters from Martinez's friends that noted her longstanding depression and anxiety and described the verbal and physical abuse that she had suffered during her first marriage.

At the initial sentencing hearing in July 2021, defense counsel reiterated that Martinez had "struggle[d] . . . in an abusive marriage," suffered from anxiety and depression for many years, and "has many different medical issues as well as mental health issues as a result of this." In the same vein, at the November 2021 resentencing, defense counsel noted that during the time Martinez had been in custody, "[s]he ha[d] not seen mental health [staff] in sufficient order so that they can monitor her medications."

8

At both the initial sentencing hearing and the resentencing, the trial court sentenced Martinez in accord with the probation department's recommendation, without providing any additional explication.

Before the enactment of section 1170(b)(6), Martinez had less incentive to develop the record regarding her apparent mental illness, psychological trauma, and history of intimate partner violence. Nor did the trial court have the benefit of the amended statute at Martinez's sentencing hearings, so that it could conduct the requisite analysis under section 1170(b)(6). (See *Banner*, *supra*, 77 Cal.App.5th at p. 242; see also *Gerson*, *supra*, 80 Cal.App.5th at p. 1096.) Under these circumstances, we conclude that a remand for resentencing is appropriate because it is not clear on this record that the trial court would have imposed the same sentence under current law.

Therefore, we vacate Martinez's sentence and remand for full resentencing. (*Gerson*, *supra*, 80 Cal.App.5th at p. 1096.) We express no opinion as to whether, on remand, the trial court should find that Martinez experienced a qualifying circumstance under section 1170(b)(6) and, if so, whether such circumstance "was a contributing factor" to her commission of the offense, or whether imposing "the lower term would be contrary to the interests of justice." (§ 1170(b)(6); see also *Banner*, *supra*, 77 Cal.App.5th at p. 242.)

Because we conclude that Martinez should be resentenced in full, we do not address her other asserted sentencing error under section 654. Martinez will have the opportunity at her resentencing to present any argument concerning the applicability of section 654.[9]

---

[9] We note that the Attorney General states in his brief to this court that the trial court erred when it "imposed concurrent sentences on counts 2, 4, and 6, rather than staying them under section 654." The Attorney General also states that "the case should be remanded so the court can determine which count in each pair of counts should be stayed, i.e., count 1 or 2, count 3 or 4, or 5 or 6." The trial court can consider these arguments at Martinez's resentencing.

B. *Restitution Order*

Martinez challenges the trial court's victim restitution order in several respects. She contends that the procedure used to determine the restitution award violated her constitutional rights to a jury trial and due process. She further asserts that the restitution order constitutes an unconstitutionally excessive fine "[b]ecause the amount was far in excess of what the Legislature permitted for the crimes and in excess of what could be awarded in a civil court on the same evidence."

The Attorney General counters that Martinez forfeited her challenges to the restitution order by failing to object on those grounds in the trial court. The Attorney General further asserts that Martinez's contentions lack merit.

1. Additional Background

As noted *ante* (part I), when entering her no contest plea, Martinez acknowledged that the court would order her "to pay full restitution" to the victims for their losses. She also had no objection to the trial court deciding the truth of the aggravated white-collar crime allegation at a restitution hearing. The trial court held the restitution hearing after Martinez pleaded no contest and before her initial sentencing hearing. Martinez did not object to the trial court deciding the amount of restitution or request that a jury be empaneled.

At the hearing, George P. testified about the loss that his company Naviscent suffered as a result of Martinez's theft and embezzlement (as determined by a forensic accountant) and the attorney fees incurred in trying to recoup the stolen funds from Martinez, including in her bankruptcy proceeding. Naviscent's forensic accountant testified about his review of the company's financial records and his opinion regarding the amount of loss. The court admitted into evidence the forensic accountant's report and supporting documentation, as well as a statement of Naviscent's attorney fees.

Michael O. testified regarding his discovery of Martinez's crimes and the amount of loss suffered by Otte Construction. The loss was documented by a settlement

10

agreement signed by Michael O. and Martinez. Michael O. also testified about a forensic accountant's review of his company's financial records and the attorney fees incurred trying to recover the loss. The trial court admitted into evidence the settlement agreement and the forensic accountant's reports.

Additionally, the trial court admitted into evidence a statement of loss suffered by the third victimized company, IMD. Martinez stipulated to IMD's stated loss.

Martinez testified in her own behalf at the hearing.[10] Martinez acknowledged that she had admitted her theft to the three business owners. Martinez said she stole only $205,017 from Naviscent/George P. She explained that she had attempted to settle the matter with the three proprietors by selling her house and paying them back the money she had taken. That effort failed, but a subsequent settlement was reached in her bankruptcy proceeding. Martinez stated that "George and his attorneys buried [her] in a mountain of paperwork. And . . . it became a huge legal battle . . ., which [she] couldn't afford because [she] had no money." On cross-examination, Martinez acknowledged telling George P. in 2018 that she had agreed to pay Michael O., believed she owed him more than she owed George P., and Michael O. " 'is in line to be paid first.' "

At the conclusion of the evidence, the prosecutor argued that the People had satisfied their preponderance-of-the-evidence burden for a restitution order. Martinez's defense counsel argued that a lack of certain bank records made it "very difficult to determine" how much Martinez had taken from Naviscent/George P. Counsel also argued that the attorney fees—particularly those of Naviscent/George P.—were "exorbitant" and unreasonable. Counsel explained that Martinez's "only asset is [her] house, which is worth not even close to the attorney[] fees that are being [] requested by

---

[10] According to the reporter's transcript, Martinez submitted a trial brief (with attached exhibits) before the restitution hearing. The trial court admitted several of the attached exhibits into evidence, but the trial brief itself is not included in the record on appeal.

11

[George P.].  So to me [the attorney fees] are unreasonable."  In response, the prosecutor noted that the bankruptcy proceeding had been "hotly litigated" and included "a two-day trial, multiple depositions, thousands of pages of discovery," and an appeal.

The trial court explained that it had a duty to review "the basis of the reasonableness of the attorney[] fees" and "determine whether a cost is a reasonable amount."  The court stated further that it had "heard testimony that the victims incurred the fees and that they paid the fees, and [] the fees, therefore, have a certain presumption of reasonableness" under relevant precedent.  Upon consideration of the evidence and arguments of counsel, the trial court concluded, inter alia, that there was "no credible evidence to challenge that the [attorney] fees are unreasonable."  Furthermore, as detailed *ante* (part I), the court awarded a total of $2,522,157.95 in victim restitution to the three companies/proprietors.

2.  Analysis

The California Constitution provides that crime victims have a right to receive "restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art I, § 28, subd. (b)(13)(A).)  Section 1202.4 implements this constitutional mandate and requires full victim restitution in criminal cases.  (§ 1202.4, subd. (f).)

Subdivision (f) of section 1202.4 provides in relevant part that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court."  (§ 1202.4, subd. (f).)  The defendant has a "right to a hearing before a judge to dispute the determination of the amount of restitution."  (*Id*., subd. (f)(1).)  The restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following:  [¶]  (A) Full or partial payment for the value of stolen or damaged

12

property. . . . [¶] . . . [¶] (H) Actual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim." (*Id.*, subd. (f)(3).) "A defendant's inability to pay shall not be a consideration in determining the amount of a restitution order." (*Id.*, subd. (g).)

"On appeal, we review the trial court's order for abuse of discretion. [Citation.] No abuse of discretion occurs if the restitution order is supported by a rational and factual basis. [Citation.] We reverse only if the trial court's order is arbitrary or capricious." (*People v. Aguilar* (2106) 4 Cal.App.5th 857, 862.)

Regarding the threshold issue of forfeiture, we agree with the Attorney General that Martinez forfeited her current challenges by failing to object on these grounds in the trial court. Martinez acknowledges that her defense counsel did not object to the restitution order on the grounds she asserts in this appeal. Nevertheless, she argues that her claim asserting a deprivation of her right to a jury trial "does not require an objection . . ., especially when, as here, such an objection would be futile." She argues further that her alleged due process violations "can be considered on appeal without an objection" and that all her claims "can be considered because they concern pure issues of law."

A defendant generally forfeits a claim not first raised with the trial court, even if the claim is constitutional in nature. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881.) Furthermore, a defendant "cannot obtain appellate relief concerning [a] restitution order [where] he failed to object to it in the trial court." (*People v. Le* (1995) 39 Cal.App.4th 1518, 1523; see also *People v. Mays* (2017) 15 Cal.App.5th 1232, 1237 [rejecting defendant's argument that his challenge to a restitution order presented a purely legal question]; *People v. Brasure* (2008) 42 Cal.4th 1037, 1075; *People v. Scott* (1994) 9 Cal.4th 331, 352, fn. 15, 354.) Because Martinez's appellate contentions relate to the trial court's process for setting the amount of restitution and cannot be evaluated without analysis of the facts and evidence presented at the restitution hearing, they do not raise

13

pure questions of law that are excepted from forfeiture.  Accordingly, we do not consider the merits of Martinez's arguments and reject her claim of error as forfeited.

### III.  DISPOSITION

The judgment is reversed, and the matter is remanded solely for resentencing under current sentencing law (see Pen. Code, § 1170).  Martinez's convictions and the restitution award are affirmed.  Following resentencing, the trial court is directed to prepare a new abstract of judgment.

_____
                               Danner, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Lie, J.

**H049732**
*People v. Martinez*