Filed 3/12/24  P. v. Espejo CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOUFHER BAUTISTA ESPEJO,<br><br>    Defendant and Appellant. | H050934<br>(Santa Clara County<br>Super. Ct. No. C2107383) |

Facing multiple charges for sexually abusing two of his younger sisters, defendant Joufher Bautista Espejo (Espejo) pleaded no contest to eight counts of forcible lewd or lascivious act on a child under age 14 (Pen. Code, § 288, subd. (b)(1)[1]).  The trial court sentenced Espejo to 50 years in prison and ordered him to pay direct restitution to both victims, J. Doe and K. Doe.

On appeal, Espejo contends there is insufficient evidence to support the trial court's $5,000 restitution award to K. Doe for noneconomic losses, namely, psychological harm, under section 1202.4, subdivision (f)(3)(F) (section 1202.4(f)(3)(F)).

For the reasons explained below, we affirm the judgment.

---

[1] Unspecified statutory references are to the Penal Code.

# I. FACTS AND PROCEDURAL BACKGROUND

A. *The Offenses*[2]

Espejo was born in 1979 and is several years older than his sisters J. Doe and K. Doe.

When J. Doe was around 15 years old, she disclosed to her mother that Espejo had sexually abused her. Her mother "appeared concerned" but did not take any action. According to K. Doe, their mother told J. Doe to "forgive" Espejo, "protected [his] image and relied on him for financial support."

In 2016, their mother invited her children to her home to visit with their grandmother. All the children except K. Doe attended the gathering. This baffled J. Doe, so she sent K. Doe a message. In response, K. Doe told J. Doe that Espejo had sexually abused her.

In August 2019, J. Doe submitted "a web tip" to the United States Naval Criminal Investigative Service (NCIS). She disclosed that Espejo had sexually abused her when she was a child, while he was home on leave from the Navy. NCIS referred the case to the San Jose Police Department.

In March 2020, J. Doe told the police that the first incident of sexual abuse occurred prior to Espejo's enlistment in the Navy. J. Doe said Espejo had digitally penetrated her vagina. Abuse of this type occurred at least once or twice a week for one year. After Espejo joined the Navy, he touched J. Doe sexually and forced her to touch him when he was home on leave. This sort of abuse occurred each time Espejo visited. The last incident of sexual abuse that J. Doe recalled occurred when she was around

---

[2] Espejo entered his no contest pleas prior to a preliminary hearing. The facts recounted here are drawn from the summary of the offenses provided in the probation officer's report prepared for Espejo's sentencing, which derived from a San Jose Police Department report.

2

seven years old.  That incident involved touching, digital penetration, and an attempted rape.

In March 2020, K. Doe told the police that Espejo had sexually abused her when she was approximately six or seven years old.  One night, K. Doe woke up to Espejo "touching her bare vaginal area.  He then digitally penetrated her vagina, causing her pain.  She was frightened and confused."  Abuse of this type occurred approximately two more times (weeks apart) when Espejo thought K. Doe was sleeping.  The last incident involved Espejo moving his hand toward K. Doe's waistline.  She grabbed his hand, pushed it away, and pretended she was sleeping.  Espejo stopped and left the room a couple of minutes later.

B.  *The Charges*

In January 2023,[3] the Santa Clara County District Attorney filed an amended complaint charging Espejo with 21 sex crimes, comprising six counts of lewd or lascivious act on a child (J. Doe) under age 14 (§ 288, subd. (a); counts 1–6 [June 26, 1998–June 25, 2001]), one count of attempted aggravated sexual assault (rape) of a child (J. Doe) under age 14 and 10 or more years younger than the defendant (§§ 664, 269, subd. (a)(1); count 7 [June 26, 2000–June 25, 2001]), six counts of lewd or lascivious act on a child (K. Doe) under age 14 (§ 288, subd. (a); counts 8–13 [May 3, 1997–May 2, 2000]), four counts of forcible lewd or lascivious act on a child (J. Doe) under age 14 (§ 288, subd. (b)(1); counts 14–17 [June 26, 1998–June 25, 2001]), and four counts of forcible lewd or lascivious act on a child (K. Doe) under age 14 (§ 288, subd. (b)(1); counts 18–21 [May 3, 1997–May 2, 2000]).  Additionally, as to each count, the amended complaint alleged four aggravating factors under California Rules of Court, rule 4.421(a)(1), (3), (8), (11).[4]

---

[3] Unless otherwise indicated, all dates were in 2023.
[4] California Rules of Court, rule 4.421(a) provides in relevant part:  "Factors relating to the crime, whether or not charged or chargeable as enhancements include that:

C.  *Change of Plea Hearing*

On January 25, pursuant to a plea agreement, Espejo pleaded no contest to four counts of forcible lewd or lascivious act on J. Doe (counts 14–17) and four counts of forcible lewd or lascivious act on K. Doe (counts 18–21).  Espejo also admitted the attached aggravating factors.  The parties stipulated that there was a factual basis for Espejo's pleas and admissions.  The prosecutor noted that her stipulation was based on the police reports.  The remaining counts in the amended complaint were submitted for dismissal at sentencing.

Under the plea agreement, the parties stipulated to a 50-year prison sentence concurrent with Espejo's federal sentence on pending sex-crime charges in a naval court marshal.  Further, in the plea agreement, Espejo acknowledged the following:  "I understand the [c]ourt will order me to pay full restitution to any victim(s) for his/her/their losses."

D.  *Probation Officer's Report*

According to the probation officer's report filed prior to Espejo's sentencing, the probation officer spoke with K. Doe on March 21.  K. Doe "reported she did not wish to provide a statement regarding [Espejo] or his crimes."  Nonetheless, K. Doe told the officer that she "has experienced significant emotional distress and plans to seek counseling."  She requested $186 for "lost wages" and $5000 for "future therapy costs" and lost earnings due to her anticipated attendance at therapy sessions.  She planned to attend therapy on a semi-weekly basis for three months.

---

[¶]  (1) The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness;  [¶] . . . [¶] (3) The victim was particularly vulnerable;  [¶]  . . . [¶]  (8) The manner in which the crime was carried out indicates planning, sophistication, or professionalism;  [¶]  . . . [¶] (11) The defendant took advantage of a position of trust or confidence to commit the offense."

Additionally, the probation report stated that J. Doe had requested "$15,077.68 for reimbursement of counseling costs ($6,451.18) and lost earnings due to time spent attending therapy sessions, meeting with her victim advocate, assisting the police and prosecution, and caring for her mental health needs ($8,626.50)."

Later, on March 29, K. Doe informed the probation officer that, in lieu of requesting restitution for future therapy costs and lost earnings, she wished to request $5000 in restitution for psychological harm under section 1202.4(f)(3)(F).

E. *Sentencing Hearing*

On April 7, the trial court held a sentencing hearing. The prosecutor stated that K. Doe was present for the hearing "online" but was "not interested in making a statement." The prosecutor added that K. Doe wanted "to request $5,000 for pain and suffering" under section 1202.4(f)(3)(F).

J. Doe appeared at the sentencing hearing, provided a victim impact statement, and requested $17,000 in restitution for "pain and suffering, wages lost, and out-of-pocket mental health payments." In her oral statement to the trial court, J. Doe mentioned her sister K. Doe and said they were close in age. J. Doe further said that in 2016, she learned Espejo had also sexually abused K. Doe. J. Doe explained that K. Doe had "opened up" to her about Espejo after avoiding him when he accompanied their maternal grandmother to California for a visit with their family. J. Doe compared her own desire to "have wanted to protect [K. Doe] from being a victim" as a child with K. Doe's desire to "protect her own children from [Espejo]" during their grandmother's visit.

In accordance with the plea agreement, the trial court imposed the upper term of eight years for count 14, plus seven consecutive middle terms of six years for counts 15 through 21, for a total sentence of 50 years in prison. The court ordered the sentence to run concurrent with Espejo's federal sentence. The court dismissed all remaining counts and attached allegations.

5

In addition, the trial court ordered Espejo to pay $15,077.68 in restitution to J. Doe. As for K. Doe's restitution request, Espejo's defense counsel objected to the $5,000 for noneconomic losses due to psychological harm. Counsel acknowledged that the court had "the authority to order pain and suffering for these kinds of cases." Nevertheless, counsel asserted that the amount sought "is an arbitrary number without any factual basis" and "the factual basis [is] speculative without a rational basis." Counsel did not request a restitution hearing. The prosecutor responded that "$5,000 for a lifetime of trauma and continuous abuse over years is more than appropriate." Over the defense objection, the court awarded K. Doe $5,186 in restitution ($186 in lost wages and $5000 for noneconomic losses), as requested.

Espejo appealed from the judgment "based on the sentence or other matters occurring after the plea that do not affect the validity of the plea." He did not request a certificate of probable cause.

## II. DISCUSSION

Espejo contends the $5,000 restitution award to K. Doe under section 1202.4(f)(3)(F) should be struck because it is not supported by substantial evidence. He argues "there was no evidence, testimony, or declaration submitted on K. [Doe]'s behalf to prove the requested $5000 restitution amount by a preponderance of the evidence."

A. *Legal Principles*

The California Constitution provides that crime victims have a right to receive "restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art I, § 28, subd. (b)(13)(A).) Section 1202.4 implements this constitutional mandate and requires full victim restitution in criminal cases. (§ 1202.4, subd. (f).)

Subdivision (f) of section 1202.4 provides in relevant part that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or

6

victims or any other showing to the court." The restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . [¶] (F) Noneconomic losses, including, but not limited to, psychological harm, for felony violations of [s]ection 288, 288.5, or 288.7." (*Id.*, subd. (f)(3).)

"Section 1202.4 does not provide guidelines for evaluating a child victim's noneconomic damages for sexual abuse. Unlike economic damages, which encompass 'objectively verifiable monetary losses' [citation], noneconomic damages compensate the victim for 'subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation.' [Citations.] The trial court has broad discretion to choose a method for calculating the amount of restitution, but it must employ a procedure that is rationally designed to determine the victim's losses. [Citation.] The court 'must demonstrate a rational basis for its award, and ensure that the record is sufficient to permit meaningful review. The burden is on the party seeking restitution to provide an adequate factual basis for the claim.' " (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1182; see also *People v. Smith* (2011) 198 Cal.App.4th 415, 431 (*Smith*).)

Section 1202.4 does not require a hearing on the issue of restitution. The statute mandates that courts "make restitution . . . by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (*Id.*, subd. (f).) Nevertheless, "[a] defendant has a right to a hearing 'to dispute the determination of the amount of restitution.' [Citation.] 'The standard of proof at a restitution hearing is preponderance of the evidence, not reasonable doubt.' [Citation.] 'Section 1202.4 does not, by its terms, require any particular kind of proof. However, the trial court is entitled to consider the probation report, and, as prima facie evidence of loss, may accept a

[victim]'s statement made in the probation report about the' loss. [Citation.] Prima facie evidence of loss may also be based on the victim's testimony. [Citation.] 'Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of the losses claimed by the victim.' " (*People v. Shelly* (2022) 81 Cal.App.5th 181, 198–199.) The "evidentiary bar" for demonstrating entitlement to noneconomic damages "is a low one" (*People v. Gomez* (2023) 97 Cal.App.5th 111, 119 (*Gomez*)), and "the prosecution [is] not required to present victim testimony or affidavits or expert declarations in connection with the restitution hearing." (*People v. Lehman* (2016) 247 Cal.App.4th 795, 803 (*Lehman*).)

"On appeal, we review the trial court's order for abuse of discretion. [Citation.] No abuse of discretion occurs if the restitution order is supported by a rational and factual basis. [Citation.] We reverse only if the trial court's order is arbitrary or capricious." (*People v. Aguilar* (2016) 4 Cal.App.5th 857, 862.) "[W]here the specific issue is whether the court's factual findings support restitution, we review those findings for substantial evidence." (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1098.)

B. *Analysis*

Espejo has not persuaded us the trial court erred in awarding K. Doe the $5,000 she requested for psychological harm resulting from Espejo's criminal conduct.[5]

The record contains substantial evidence supporting the $5,000 restitution award to K. Doe, namely the information stated in the police investigation report, the probation report, and J. Doe's victim impact statement. At Espejo's change of plea hearing, the prosecutor asserted that the police reports provided a factual basis to Espejo's pleas and

---

[5] Espejo's argument against the restitution order does not differentiate between a challenge to the basis of the award and the amount specified by the trial court. Because there is no specific argument challenging the amount of the award itself as excessive, we limit our analysis to the legal basis for the award.

admissions. Espejo did not dispute that assertion. Later, at Espejo's sentencing hearing, he likewise did not object to the probation report's summary of his repeated sexual abuse of K. Doe "obtained from [the] San Jose Police Department Report." The probation report's summary of Espejo's offenses included K. Doe's report to police that when she was about six or seven years old, Espejo caused her "pain" when digitally penetrating her on multiple occasions. K. Doe also reported that Espejo's criminal conduct "frightened and confused" her. K. Doe further described to police her mother's protection of Espejo in the face of J. Doe's disclosure of abuse.

Furthermore, K. Doe told the probation officer that she had "experienced significant emotional distress" and planned to seek counseling due to Espejo's sexual abuse. In the same vein of psychological distress and familial alienation, as discussed more fully *ante*, (pt. I.E.), J. Doe recounted in her victim impact statement at sentencing how her sister K. Doe did not attend a family gathering when their grandmother came for a visit because Espejo was present.

The unrebutted evidence before the trial court provided a rational and factual basis for restitution for the "psychological harm" (§ 1202.4(f)(3)(F)) resulting from Espejo's criminal conduct. (See *Lehman*, *supra*, 247 Cal.App.4th at pp. 802–805 [affirming noneconomic restitution awards of $900,000 and $100,000 based on minor victims' trial testimony, one victim's statement at sentencing, and a probation report]; see also *Smith*, *supra*, 198 Cal.App.4th at p. 436 [affirming noneconomic restitution award of $50,000 per year of sexual abuse]; cf. *Gomez*, *supra*, 97 Cal.App.5th at p. 119 [reversing and remanding for further restitution proceedings "because there is *no* evidence of the impact of appellant's crimes on John Doe, and the trial court relied exclusively on its experience and common sense regarding similar incidents in awarding restitution"].) We thus conclude the trial court acted within its discretion when it awarded restitution to K. Doe in the amount she had requested.

9

## III.  DISPOSITION

The judgment is affirmed.

_____
Danner, J.

WE CONCUR:


_____
Greenwood, P. J.


_____
Bromberg, J.


**H050934**
*People v. Espejo*