Filed 12/18/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY R. SANTORI,<br><br>    Defendant and Appellant. | B262306<br><br>(Los Angeles County<br>Super. Ct. Nos. MA064238,<br>MA064646) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eric P. Harmon, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

---

[*]      Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part 2 of the Discussion.

We affirm the trial court's restitution order requiring defendant Anthony R. Santori pay the City of Palmdale $18,878.23 in restitution for 32 incidents of graffiti. This case is distinguishable from *Luis M. v. Superior Court* (2014) 59 Cal.4th 300 (*Luis M.*) in which our Supreme Court held that no factual nexus existed between the minor's conduct and the juvenile court's restitution order. Whereas in *Luis M.* the restitution order was based only on the average cost for graffiti remediation, here the People presented evidence of defendant's specific acts, and that evidence was considered in calculating the amount of restitution.

## FACTS AND PROCEDURE

In addition to a history of vandalism, defendant had a prior sustained petition for taking a vehicle without the owner's consent. He also suffered a prior burglary conviction. While on probation for vandalism and subject to search conditions, deputy sheriffs observed graffiti on defendant's cell phone depicting his moniker "Seor." Defendant admitted his moniker was Seor. The City of Palmdale (City) had abated numerous incidents of graffiti depicting the name Seor and had retained photographs of the abated graffiti. Defendant admitted that he was responsible for 36 of those incidents.

In case No. MA064238, defendant was charged with seven counts of vandalism. In each count it was alleged that the damage was over $400. Defendant pled no contest to one count of vandalism.

In case No. MA064646, defendant was charged with five counts of vandalism in an amount over $400. Defendant pled guilty to one count, and agreed to pay restitution.

The prosecution requested $21,952 in restitution. Defendant objected to the amount, and the court held a hearing.

At the restitution hearing, Ruth Oschmann, the City's crime prevention officer testified. She analyzed the City's cost to abate the graffiti in defendant's two cases. She considered the costs of the cleanup crew, administrative costs, her salary, costs to hire a deputy sheriff, and the cost of Graffiti Tracker. Graffiti Tracker is a computer software program that the City pays to use. The City also pays the Los Angeles County Sherriff's Department a fee to hire a deputy to investigate the graffiti. Based on these costs

2

Oschmann has developed a "per minute cost" to abate graffiti. She testified that it took an average of 100 minutes to remove a piece of graffiti.

Oschmann reviewed the photographs of the graffiti drawn by defendant. Oschmann clarified that the City was seeking compensation for 32 incidents even though there were 70 or more total.[1] Based on the photographs Oschmann concluded that 100 minutes was a reasonable estimate for each incident even though some of the items may have taken less time and some more. Oschmann did not know the actual number of hours spent cleaning up the 32 incidents of graffiti for which the City was seeking compensation. Nor did she calculate the distance from the maintenance yard that the cleanup crew was required to travel. Defendant did not identify any photograph suggesting that the abatement time should have been less than average.

After reducing the requested investigative costs, the court awarded $18,878.23 in restitution.

## DISCUSSION

### 1. Substantial Evidence Supported the Restitution Award

"In 1982, California voters passed Proposition 8, also known as The Victims' Bill of Rights. At the time this initiative was passed, victims had some access to compensation through the Restitution Fund, and trial courts had discretion to impose restitution as a condition of probation. [Citations.] Proposition 8 established the right of crime victims to receive restitution directly 'from the persons convicted of the crimes for losses they suffer.' (Cal. Const., art. I, § 28, subd. (b).) The initiative added article I, section 28, subdivision (b) to the California Constitution: 'It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim

---

[1]    The record states both that there were 70 and that there were 77 incidents.

3

suffers a loss, unless compelling and extraordinary reasons exist to the contrary.'"
(*People v. Giordano* (2007) 42 Cal.4th 644, 652.)

"Penal Code section 1202.4 provides for full restitution of victims' *economic* losses, but 'does not authorize direct restitution for noneconomic losses.'" (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.) "At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss. [Citations.] 'Once the victim has [i.e., the People have] made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.'" (*Ibid*.)

We review the restitution award for abuse of discretion. (*People v. Giordano, supra*, 42 Cal.4th at p. 663.) "On appeal, we presume that a judgment or order of the trial court is correct, '"[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."'" (*Id*. at p. 666.) Relying on *Luis M., supra*, 59 Cal.4th 300, defendant argues the prosecution failed to demonstrate a factual nexus between the restitution order and the damage caused by defendant. As defendant argues the restitution statute for juveniles (Welf. & Inst. Code, § 730.6) considered in *Luis M*. is substantially similar to the restitution statute at issue here (Pen. Code, § 1202.4), making *Luis M*. relevant to this appeal. (See *People v. Birkett* (1999) 21 Cal.4th 226, 240, fn. 15.)

In *Luis M., supra*, 59 Cal.4th 300, our Supreme Court considered the sufficiency of the evidence of a restitution award for defacement by graffiti. In that case, a crime prevention officer testified that the minor committed nine acts of graffiti in six locations. (*Id*. at p. 303.) The crime prevention officer "did not produce photographs or otherwise describe the graffiti except to note that it involved a traffic arrow sign and several electrical boxes." (*Id*. at pp. 303-304.) The crime officer had "no information" about the costs associated to the minor's conduct. (*Id*. at p. 304.) She testified that the city spent $1,380,208 to abate 3,200 incidents at an average cost of $431.32 per incident. (*Ibid*.)

4

As relevant here, our Supreme Court explained: "a restitution award for economic losses [citation] may include the materials, equipment, and labor costs incurred for remediation. Preexisting expenditures, such as salaried employees and equipment purchases, may be included provided those costs can be fairly apportioned on a pro rata basis to the minor's conduct." (*Luis M., supra*, 59 Cal.4th at p. 309.) "While the court need not ascertain the exact dollar amount of the City's losses . . . , its calculation . . . must have some factual nexus to the damage caused by the minor's conduct." (*Ibid.*, citations omitted.)

In *Luis M.*, our high court concluded that the evidence before it was insufficient to support the restitution order. (*Luis M., supra*, 59 Cal.4th at p. 309.) "[T]he juvenile court based its estimate on an *average of all costs* of graffiti cleanup rather than a rational estimate of costs occasioned by Luis's conduct. The People provided no evidence of the size or type of Luis's graffiti. There was no evidence about the materials, equipment, and labor required to remove it." (*Ibid.*)

While holding the evidence insufficient, the high court clarified that "the trial court retains broad discretion . . . to estimate the material, equipment, and labor costs necessary to repair the damage caused by a discrete act of graffiti. According to the record before us, the City photographs graffiti as part of its investigation and tracks all incidents by computer. The photographs presumably reflect the size, extent, and type of graffiti involved. Using such evidence, a witness familiar with graffiti abatement could estimate the average cost per square foot (or other measure) to paint over or otherwise restore the defaced surfaces." (*Luis M., supra*, 59 Cal.4th at p. 310.)

Here, Oschmann followed the foregoing mandate in *Luis M.* She was familiar with graffiti abatement and established the average cost per minute to restore the defaced surfaces. Although her conclusion that in this case the removal of the graffiti attributable to defendant averaged 100 minutes, defendant did not challenge that conclusion with reference to any act of graffiti. He did not identify any photograph that would support his claim that the restitution order is unreasonable. In contrast to *Luis M.*, here the crime prevention officer considered the photographs depicting defendant's graffiti when she

5

calculated the cost to restore the defaced surfaces. Oschmann's opinion was based on defendant's graffiti not just an average for removal of the city's graffiti. The evidence was sufficient to support the People's prima facie burden, and defendant identified no specific error in the amount.

## 2. The Reduction in Investigative Costs Was Reasonable[*]

Defendant describes the trial court's reduction in the amount of restitution as a "guesstimate" not rationally related to his conduct. (Capitalization and boldface omitted.) For that reason, he argues the court abused its discretion in entering its restitution order. We first provide additional background and then discuss defendant's argument.

Oschmann testified that the City pays for the Graffiti Tracker software and a deputy sheriff. The court expressed concern that investigative costs had to be reasonable. "I mean, they can't hire a squad of 500 . . . Navy Seals . . . at the cost of . . . a million dollars a seal and then pass that cost along." The court also expressed concern that while some of the investigative costs in Oschmann's model were included in this case, some were not. The court indicated it was considering a "reasonable reduction." Defense counsel asked the court to delete the costs for both the Graffiti Tracker and the investigator. The court reduced the amount of investigative costs by half to reflect the investigation conducted in this case.

The court's reduction of investigative costs in this case was reasonable. The reduction was related to the limited investigation necessary because defendant admitted to 36 incidents of graffiti and admitted that his moniker was Seor. Nevertheless, there were still costs associated with the investigation as the City had photographed the graffiti prior to abating it and had used Graffiti Tracker to do this. A deputy sheriff showed defendant the pictures, thereby securing defendant's admission. Based on these undisputed facts the court used a rationale basis to reduced the investigative costs sought by the City. The trial court was not required to determine the exact amount the City

---

[*]     See footnote, *ante*, page 1.

6

incurred in abating defendant's graffiti.  (*Luis M., supra*, 59 Cal.4th at p. 309.) Defendant does not show the court abused its discretion in reducing the amount for the investigation.

## DISPOSITION

The restitution order is affirmed.


FLIER, J.

WE CONCUR:


RUBIN, Acting P. J.


GRIMES, J.