Filed 3/16/16  P. v. Altieri CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TROY PHILIP ALTIERI,<br><br>        Defendant and Appellant. | A144998<br><br>(Contra Costa County<br>Super. Ct. No. 51322650) |

Defendant and appellant Troy Philip Altieri appeals from the trial court's restitution award.  We affirm.

PROCEDURAL BACKGROUND

In November 2013, appellant, along with co-defendant Marshall Pease, were charged by information with one count of grand theft (Penal Code § 487, subd. (a))[1] and one count of possession of burglary tools (§ 466).

In June 2014, the information was amended to add one count of trespass for the purpose of injuring property or property rights (§ 602, subd. (k)).  Appellant pleaded no contest to that charge and was placed on probation for 90 days, with imposition of sentence suspended.  The other counts were dismissed.  The issue of restitution was reserved for a future hearing.

The trial court held a contested restitution hearing in February 2015.  Based on testimonial and documentary evidence presented by the People, the trial court awarded

---

[1] All undesignated statutory references are to the Penal Code.

1

the victim, the City of Richmond, restitution in the amount of $41,100, with appellant and Pease jointly and severally liable.

This appeal followed.

FACTUAL BACKGROUND

Preliminary Hearing Testimony Regarding the Underlying Incident

The evening of April 15, 2013, Richmond police officer David Longacre was patrolling near the "Kaiser Shipyard graving basins." He noticed a gate leading to the basins was open a few inches. The officer entered and walked down to a walkway below the basins. He noticed a fishing pole propped against the wall behind some electrical boxes and a white bag containing some small hand tools on the ground. The covers of the electrical boxes were open and there were sections of encased-aluminum wire that had been cut and removed. He continued along the walkway and 25-30 feet away he saw what appeared to be a few hundred feet of the same wire lying on the ground and more of the wire hanging out of an overhead conduit. About 75 feet further, there was a winch hooked up to a car battery; a black bag with tools and fishing bait was next to the winch.

Officer Longacre testified that covers from three or four electrical boxes had been removed and the wires inside had been cut. The only wire that remained was a small section of cut wire that was still attached inside the boxes; the remainder of the wire had been pulled out from the conduits. The officer did not notice any other damage to the boxes.

The police found appellant and Pease hiding in a storage area a few hundred feet from the winch. Appellant admitted the black bag by the winch and the fishing pole were his.

Michael Williams, a manager in the Port Department for the City of Richmond, testified about the damage he saw on April 16, 2013 at the graving basins. Wire had been pulled out of conduits, pull boxes where wires are joined together had been separated, and two or three electrical boxes were damaged. About 400 to 600 feet of wire had been removed. The previous day those wires and boxes were intact. He asked an electrical company that was working for the Port on other nearby projects, Rosendin Electric, for

2

an estimate to repair the wires and the electrical boxes that had been broken into. The quote for the repairs was in the range of $40,000 to $50,000.

Evidence at the Restitution Hearing

The City of Richmond sought restitution in the amount of $41,100. Robert Leung, a project manager for Rosendin Electric,[2] testified he went to the Port on April 16, 2013 and observed "cable and conduit that were cut." The area where he observed the damage was in the same area as depicted in photographs documenting the damage presented to the court. The cost for repairing the damage was $41,100; the company had actually repaired the damage and been paid that amount. Leung explained that the high cost of the repairs was due to the fact that the cables had been live and cutting them caused electrical shorts resulting in "a lot of fire damage and electrical damage."

Leung testified the repairs included the costs of replacing two meter mains, a transformer, an electrical panel, and 285 feet of copper wire. Damage to at least some of those components was apparently not depicted in the photographs admitted into evidence. Leung explained that the wires "went through various berths in the facility." He did not remember whether the copper wire was replacing wire that previously had been aluminum; he stated, "what we replaced was needed to get the system back up and running."

Appellant did not present any evidence at the restitution hearing.

DISCUSSION

Under section 1202.4, a trial court must order victim restitution "in every case in which a victim has suffered economic loss as a result of the defendant's conduct." (§ 1202.4, subd. (f).) The court "shall require" the defendant to make restitution "based on the amount of loss claimed by the victim . . . or any other showing to the court." (§ 1202.4, subd. (f); see also § 1202.4, subd. (f)(3).)

"At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the

_____

[2] The transcript states "Roosevelt Electric," but the parties agree Leung works for Rosendin Electric.

3

amount of his or her economic loss. [Citations.] 'Once the victim has [i.e., the People have] made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26; accord *People v. Santori* (2015) 243 Cal.App.4th 122, 126.) The preponderance of the evidence standard of proof applies. (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.) This court reviews the trial court's restitution award for an abuse of discretion. (*Ibid.*) "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." (*People v. Dalvito* (1997) 56 Cal.App.4th 557, 562.) "In reviewing the sufficiency of the evidence, the ' "power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' " (*People v. Baker* (2005) 126 Cal.App.4th 463, 468–469.)

Appellant contends the trial court erroneously "interpreted appellant's plea agreement and plea to constitute some sort of a concession by [appellant] that he and his co-defendant, in the course of an attempted theft, had directly caused the damages to the electrical system that Leung described." Appellant is mistaken. The trial court stated during the restitution hearing that a restitution award was contemplated at the time of the plea: "[E]veryone knew there was significant restitution. It's on [appellant's] misdemeanor plea form that he was going to have to pay victim restitution, joint and several liability. It is in the minutes from the plea. It's on his probation order. . . . So, [appellant] has known all along he's going to be responsible for victim restitution. [¶] In addition, at the time of his plea in June of 2014, it was already known that there was an estimate of $41,000 because the Court's file has a contemporaneous note indicating $41,000 in estimated restitution. And that was at the time of plea." The court also stated in making its ruling, "the People have presented evidence through document[s], as well as live testimony through Mr. Leung, that a day after [appellant] and his co-perpetrator were found stealing, damaging, whatever, the property of the City of Richmond, Mr. Leung is at the site assessing the damage, and because there was damage, the entire

4

system had to be replaced. There has been no evidence to contradict Mr. Leung's estimate or his testimony, and the defense does have a burden to show that the victim's estimate is inaccurate."

Appellant points to nothing in the record showing that the trial court failed to require the People to make a prima facie showing of the amount of damages, or failed to consider appellant's arguments below regarding the sufficiency of the People's showing. We understand the court's reference to appellant's burden to be a reference to the rule that, after the People have made a prima facie showing, "the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim." (*People v. Millard*, *supra*, 175 Cal.App.4th at p. 26; see *People v. Diaz* (1992) 3 Cal.4th 495, 567 ("[a]s a general rule, we presume that the trial court has properly followed established law"].) Accordingly, we reject appellant's claim that the trial court treated appellant's plea as a "concession that [his and his co-]defendants' actions were the cause of [the claimed] damages."

In a related contention, appellant argues the trial court imposed the burden of proof on appellant, rather than treating the People's showing as a rebuttable presumption. We reject that claim for the same reason we reject the claim that the court treated the plea as a concession. Nothing in the record demonstrates the trial court failed to impose the burden on the People of making a prima facie showing of the amount of damages. The court properly imposed on appellant the burden of rebutting that showing. (*People v. Millard*, *supra*, 175 Cal.App.4th at p. 26.)

To the extent appellant contends the trial court abused its discretion in failing to find the People's showing of damages rebutted, we reject that claim as well. Appellant speculates that Leung described other unfinished work on the site as damages from the underlying incident. He principally emphasizes that the police and port manager did not mention or document the damage identified by Leung to equipment other than the electrical boxes and wires near the site of appellant's arrest. However, Leung explained how the act of cutting live wires resulted in damage to that equipment. That was

5

sufficient to meet the People's burden of making a prima facie showing, and we defer to the trial court's implied determination that Leung's testimony was credible.

DISPOSITION

The judgment is affirmed.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.

(A144998)