Filed 5/5/16  P. v. Quezada CA2/8

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAIME QUEZADA,<br><br>    Defendant and Appellant. | B264909<br><br>(Los Angeles County<br>Super. Ct. No. BA431860) |

APPEAL from an order of the Superior Court of Los Angeles County.  Craig J. Mitchell, Judge.  Affirmed.

Joseph R. Escobosa, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Jaime Quezada, along with his codefendant, tagged several local businesses with gang graffiti. Defendant pleaded no contest to a single count of misdemeanor vandalism (Pen. Code, § 594) and admitted a gang enhancement (Pen. Code, § 186.22, subd. (d)), rendering him eligible for a felony sentence. He was sentenced to two years in prison and ordered to pay restitution. Defendant stipulated to $500 in restitution to the owner of two damaged properties. On appeal, he challenges the $950 in restitution to the City of Los Angeles (City), for remediating the graffiti at two other properties. Defendant argues there is insufficient evidence connecting the City's $950 charge to the costs of remediating the damage he caused. We disagree and affirm.

## FACTS

The most important piece of evidence submitted at the restitution hearing was the City's invoice for removing graffiti at the two locations. The invoice indicates that, at each property, there was black spray paint graffiti on a red brick wall, which paint was removed (as opposed to, for example, being painted over). At the first location, the graffiti was between 12 and 18 feet in length, necessitating the cleaning of a 300 square foot area of wall. The work was performed between December 3 and 4, 2014. At the second location, the graffiti was smaller, requiring the City to clean only 40 square feet. The work was performed between December 4 and 5, 2014. The work was not done by the City itself, but was contracted out to one of the City's abatement contractors, Korean Youth & Community Center. The invoice listed a price of $475 for each location, for a total of $950.

The invoice itself explained: "The cost of graffiti removal incurred by the City of Los Angeles encompasses various elements, ALL OF WHICH ARE NECESSARY TO OPERATE A *CITYWIDE GRAFFITI REMOVAL PROGRAM*. The costs listed on this sheet do NOT reflect the costs of SOLELY removing graffiti. Rather, the prices given are flat rates, fundamentally based upon the type of surface that has been tagged and the subsequent type of removal required. In addition, however, there are a multitude of costs taken into account that determine a given flat rate. Our office does not list an item by item breakdown of costs, however, they include but are not limited to . . . ." At this point,

the invoice sets forth a list of bullet items, including materials and equipment, vehicle and equipment maintenance, insurance, preparation and removal time at each location, graffiti removal personnel, gasoline, and travel time.

Gerry Valido, who works for the City Department of Public Works, Office of Community Beautification, supervising graffiti removal for businesses, testified at the restitution hearing. He explained that the flat rates charged by the City are "fundamentally based upon the type of surface that has been vandalized with graffiti and the type of removal that's required." He testified that the City contracts the work out to various organizations under flat rate contracts, in which a contracting organization agrees to perform all of the necessary removal work in its designated area of the City in return for a fixed annual fee.

On cross-examination, defendant elicited Valido's testimony that, for fiscal year 2013-2014 (the last year for which complete data was available), the City's entire graffiti abatement budget was $7,538,000, and it abated a total of 546,188 instances of graffiti for the year. In that period, Korean Youth & Community Center was paid $460,000 (on its contract) and remediated 32,527 instances of graffiti. Armed with this data, defendant calculated that the City's per-instance cost of remediation was $13.80 ($7,538,000/546,188) and Korean Youth & Community Center's per-instance cost was $14.14 ($460,000/32,527), and argued that the City's restitution award should therefore be in that range per location.[1]

The trial court disagreed, concluding that the City's scheme, which sets a flat rate based on the type of surface, is reasonable. The court reviewed the City's price per surface data, and concluded the amounts charged logically correspond to the ease or difficulty of removing the graffiti from particular types of surfaces. Finding that the City's flat-rate scheme was not arbitrary or overbroad, the court awarded the City restitution in the amount sought of $950.

---

[1]     Defendant performed the same calculation on data for the not-yet-completed 2014-2015 fiscal year, and reached an amount of $19.96 per location, which he argued should be the highest amount of restitution awarded.

3

**DISCUSSION**

Under Penal Code section 1202.4, subdivision (f), a restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." It shall include payment for the value of damaged property, which, when repairs are made, shall be "the actual cost of repairing the property." (Pen. Code, § 1202.4, subd. (f)(3)(A).) The restitution statute expressly provides that a governmental entity may be entitled to restitution when it is responsible "for repairing, replacing, or restoring public or privately owned property that has been defaced with graffiti," when it has sustained an economic loss as a result of a graffiti vandalism. (Pen. Code, § 1202.4, subd. (k)(5).)

Judges have broad discretion in fixing the amount of restitution, and the court may use any rational method, provided it is reasonably calculated to make the victim whole. (*In re Dina V.* (2007) 151 Cal.App.4th 486, 489.) "We review the restitution award for abuse of discretion. [Citation.] 'On appeal, we presume that a judgment or order of the trial court is correct, " '[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " ' [Citation.]" (*People v. Santori* (2015) 243 Cal.App.4th 122, 126.)

Courts have grappled with the calculation of the "actual cost of repairing" property vandalized with graffiti when the graffiti has been remediated by a governmental agency that abates large amounts of graffiti and does not keep track of specific expenses. In *Luis M. v. Superior Court* (2014) 59 Cal.4th 300, our Supreme Court reversed an award of restitution calculated solely on a city's average cost per incident of graffiti. The court recognized the practical difficulties in calculating an exact amount of restitution in such a case, but concluded that the city could not rely on an average cost model when there was no connection made between those average costs and the actual harm caused by the defendant. (*Id*. at pp. 308-309.) "While the court need not ascertain the exact dollar amount of the [c]ity's losses [citation], its calculation . . . must have some factual nexus to the damage caused by the [defendant]'s conduct." (*Id*. at p. 309.) With no evidence of

4

the size or type of the defendant's graffiti, or the materials, equipment and labor required to remove it, there was simply insufficient evidence that the average cost was appropriate in that case. (*Ibid.*)

In contrast, in *People v. Santori* (2015) 243 Cal.App.4th 122, the evidence included: (1) a calculation of the "per minute cost" for the government entity to abate graffiti; (2) an expert's testimony that it took an average of 100 minutes to remove a piece of graffiti; and (3) the expert's testimony that, based on a review of photographs of the graffiti at issue, 100 minutes was a reasonable estimate for each, although some may have taken more and others less. (*Id.* at p. 125.) On the defendant's appeal, this appellate division concluded that the evidence was sufficient; the expert's testimony established the necessary nexus between the average removal cost and the defendant's graffiti. (*Id.* at p. 127.)

In the current case, we conclude a sufficient nexus exists. The City's invoice itself indicates the type of surface (red brick), the service done (black spray paint removal), and the square feet cleaned (300 and 40, respectively). The invoice also indicates that the work was performed on different days, so there is no suggestion that travel and equipment costs were saved by doing the work on both sites at the same time. While the invoice shows that one piece of graffiti was much larger than the other, both were sizeable, and there is no suggestion that, considered together, the time taken to remove them would not be the same or more than two average pieces of graffiti on the same type of surface. Moreover, the bulk of the City's costs in removing a piece of graffiti are not controlled by the size of the damage itself. To be sure, a larger piece of graffiti requires more time and also materials, but other costs are more substantial: equipment, maintenance, travel time, and the costs of administering a comprehensive graffiti-removal system.

In the face of this evidence, defendant offered only a low-ball estimate based on a per-unit-of-graffiti cost of removal citywide. There are two problems with this calculation. First, it considers only the expense of removing the graffiti itself and not the administrative costs of running the program. Second, it is precisely the type of

5

calculation held inappropriate in *Luis M.* – a per-unit cost calculation bearing no relationship to the actual damages caused by the defendant.

## DISPOSITION

The restitution order is affirmed.



                                            RUBIN, J.

WE CONCUR:



        BIGELOW, P. J.



        FLIER, J.