Filed 11/30/23  P. v. Mansfield CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MILAN AMADOR MANSFIELD,<br><br>Defendant and Appellant. | B320480<br><br>(Los Angeles County<br>Super. Ct. No. SA101586) |

APPEAL from an order of the Superior Court of Los Angeles County.  Kathryn A. Solorzano, Judge.  Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, Wyatt E. Bloomfield and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Milan Mansfield appeals from the trial court's order requiring him to pay $6,802.52 in restitution to Venice Arts Council for vandalizing a mural. We hold that the trial court did not abuse its discretion because the restitution order was supported by sufficient evidence. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 1, 2019, the Los Angeles County District Attorney's Office filed a complaint against Mansfield for felony vandalism under Penal Code section 594, subdivision (a), in counts 1 through 3 for causing over $400 in damage by graffiti. The complaint also alleges misdemeanor vandalism in counts 4 through 6 for causing over $400 in damage by graffiti.

On January 2, 2020, Mansfield pled no contest to count 1 for "unlawfully and maliciously defac[ing] with graffiti" Daniel Rosen's property. The court dismissed the remaining counts conditioned on Mansfield agreeing that he would be punished for crimes he was not convicted of, a waiver of his rights under *People v. Harvey* (1979) 25 Cal.3d 754. As such, Mansfield agreed to pay restitution for the dismissed counts. Mansfield's *Harvey* waiver for count 2 established at minimum that on or about May 3, 2019, he unlawfully and maliciously defaced property belonging to Alejandra Amaya and Emily Winters.

On October 1, 2021, the trial court held a restitution hearing. The prosecution called Winters, a member of Venice Arts Council, to testify. Winters testified that in 1990, she painted a mural entitled the Endangered Species Mural on a building located at 801 Ocean Front Walk, Venice, California. She further testified that the mural was repaired and repainted on or around June 21, 2019 to remove graffiti. Prior to that, the mural was repainted only once in 2006. Graffiti had accumulated on the mural's lower section over two to three years. The word

FATSO appeared on the mural several times. The exhibits included a photograph depicting a large spray painting of FATSO across the mural, which was from May 1, 2019. The FATSO lettering covered other graffiti that was also on the wall. Mansfield testified during the restitution hearing that he graffitied over other people's graffiti in the May 1, 2019 photograph. Mansfield claimed that the bottom portion of the mural was black and had no artwork.

When Winters made a police report, the police identified Mansfield as "the guy who always does the 'FATSO.'" Rosen also testified that in 2019, FATSO lettering appeared several times on a hummingbird mural on his building located at 12517 Venice Boulevard, Venice, California.

Winters testified that because the most recent FATSO lettering was so large, she could not take it off herself. The prosecutor then asked:

"Q: So the actual fixing of the mural, the cost that we just talked about, was that to fix the larger word "FATSO"?

A: Yes."

Winters further stated that before the FATSO graffiti, the mural was not so damaged that it needed repair. Prior to the FATSO lettering, the graffiti was "stuff [she] could take off." Winters confirmed that after FATSO appeared on the mural in 2019, the mural required professional cleaning from the Social and Public Art Resource Center (SPARC). Venice Arts Council paid SPARC to do the mural repair. An invoice from SPARC to Venice Arts Council showed $2,957.52 for graffiti removal, $1,800 for wash and coating maintenance, and $2,045 for in-painting repairs. The total amount was $6,802.52.

On March 22, 2022, the trial court held a further restitution hearing. At the hearing, a different prosecutor who

3

was not present for Winters's testimony stated he read the October 1, 2021 transcript. He understood Winters's testimony to mean that "she paid a certain amount back in 2016 [sic] and then there was damage done to the mural and th[at] only after the large writing done by the defendant did they redo the entire mural. So that one was a little tricky. I don't think anybody asked her, maybe I missed it, based on the previous damage and the mural having to be redone, what exactly she was asking for." The trial court reserved jurisdiction and set a further restitution hearing so that the trial court could review the transcript from October 1, 2021.

On May 2, 2022, the trial court ordered Mansfield to pay $6,802.52 to Venice Arts Council and $9,674 to Rosen. The trial court reasoned that Winters testified that repair was required because of Mansfield's FATSO graffiti. The trial court noted that Winters testified she was repairing the mural with a toothbrush, "[b]ut after [Mansfield]'s damage, they couldn't do that. . . . [T]hey could not fix it themselves. They had to go through a third party vendor."

The trial court concluded: "Just because some of the other people who put graffiti were not identified doesn't mean he's not responsible as the person who pushed this to a situation where she could not remedy herself and she had to hire somebody to do so."

Mansfield timely appealed the restitution order as to Venice Arts Council.

# DISCUSSION

## I. The trial court did not abuse its discretion in ordering Mansfield to pay restitution to Venice Arts Council

Mansfield argues that the trial court erred because it ordered him to pay to remove graffiti that had accumulated over several years. We disagree. Mansfield failed to rebut the prosecution's prima facie case that the mural did not require repair before Mansfield vandalized the mural with FATSO on or about May 3, 2019. Accordingly, we affirm the trial court's order.

### A. General legal principles

Under Penal Code section 1202.4, subdivision (f)(3), a restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." It shall include payment for the value of damaged property, which, when repairs are made, shall be "the actual cost of repairing the property." (Pen. Code, § 1202.4, subd. (f)(3)(A).)

"At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss." (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).) Once the victim makes a prima facie showing, the burden shifts to the defendant to disprove the amount of loss claimed by the victim. (*Ibid.*) "The standard of proof at a restitution hearing is preponderance of the evidence, not reasonable doubt." (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319–1320.) A party satisfies its burden by "provid[ing] an adequate factual basis for the claim." (*People v. Giordano* (2007) 42 Cal.4th 644, 664.)

5

"Courts have broad discretion in fixing the amount of restitution, and they may use any rational method, provided it is reasonably calculated to make the victim whole." (*People v. Hurtado* (2019) 35 Cal.App.5th 871, 878.) "We review the restitution award for abuse of discretion. [Citation.] 'On appeal, we presume that a judgment or order of the trial court is correct, " '[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " ' " (*People v. Santori* (2015) 243 Cal.App.4th 122, 126 (*Santori*).) "No abuse of discretion occurs if the restitution order is supported by a rational and factual basis." (*People v. Aguilar* (2016) 4 Cal.App.5th 857, 862 (*Aguilar*).)

While a trial court awarding restitution "need not ascertain the exact dollar amount of the [victim's] losses," its calculation "must have some factual nexus to the damage caused by the [defendant's] conduct." (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 309–310.) The trial court "retains broad discretion . . . to estimate the material, equipment, and labor costs necessary to repair the damage caused by a discrete act of graffiti." (*Id*. at pp. 304, 310 [analyzing the general restitution statute applicable to juvenile offenders and noting it is "parallel to section 1202.4"].)

Finally, we determine whether substantial evidence supports the trial court's factual findings. (*Millard*, *supra*, 175 Cal.App.4th at p. 26.)

**B.** **Restitution analysis**

Here, there was a factual nexus between the amount claimed by Venice Arts Council and the damage caused by Mansfield's conduct. Mansfield failed to rebut Winters's unequivocal testimony that the mural did not require repair until the large FATSO lettering appeared on the mural. The FATSO

6

lettering also covered other graffiti and thus it was rational for the trial court to conclude that Mansfield's FATSO graffiti prevented Winters from removing the smaller graffiti herself. The sufficiency of the evidence standard does not require "a per-minute graffiti removal cost" or "time estimate for remediation of defendant's graffiti." (*Aguilar*, *supra*, 4 Cal.App.5th at p. 865.) The trial court relied on Winters's testimony, the SPARC invoice, Venice Arts Council's checks to SPARC, and photographs showing "the large size and extent of the graffiti." (*Ibid*.) Therefore, the trial court's determination was based on a "rational and factual basis" reasonably related to Mansfield's vandalism. (*Id*. at p. 862.) Accordingly, we find no abuse of discretion.

In an interim hearing, a prosecutor did express a qualified belief that Winters did not state "what exactly she was asking for" regarding the damage that preceded the FATSO graffiti. Even there, this prosecutor noted, "maybe I missed it." We find this statement of limited utility as the record of Winters's testimony speaks for itself, and the prosecution plainly asked for Mansfield to pay for all the remediation work done on the mural. Here, the trial court took care to read the transcript and reached its own conclusion about what Winters's testimony meant. We find no error in the court's conclusion. Further, the dollar amount was supported by the invoice from SPARC. Accordingly, "[t]he evidence was sufficient to support the People's prima facie burden, and [Mansfield] identified no specific error in the amount." (*Santori*, *supra*, 243 Cal.App.4th at p. 127.)

Mansfield's claim that the prosecution failed to tie the FATSO graffiti to May 3, 2019 is also unavailing. Mansfield pled that he vandalized the mural "on or about May 3, 2019." Mansfield then testified that he was the individual in a

photograph dated May 1, 2019, who was outlining the word FATSO over other people's graffiti on the Endangered Species mural. Consequently, sufficient evidence supports the trial court's determination that the prosecution made a prima facie showing that on or about May 3, 2019, Mansfield vandalized the Endangered Species Mural. As such, the trial court did not abuse its discretion in concluding that the prosecution made a prima facie showing and Mansfield failed to rebut this showing.

Mansfield cites to *People v. Chappelone* (2010) 183 Cal.App.4th 1159 (*Chappelone*) and *People v. Pangan* (2013) 213 Cal.App.4th 574 (*Pangan*) to support his argument that the trial court abused its discretion. Both cases are distinguishable as neither pertains to vandalism nor graffiti repair. The First District in *Chappelone* held that the trial court abused its discretion when it valued damaged goods based on their full retail value. (*Chappelone*, at p. 1182.) There, some stolen goods were damaged prior to being stolen, so there was no basis for the trial court to have the defendant pay restitution based on the value of unspoiled goods. (*Ibid*.) The trial court compounded its error by awarding the retail value of the goods rather than their wholesale value. (*Id*. at p. 1181.) Finally, the court erred when it awarded both the goods themselves and the value of the goods to the store. (*Ibid*.) Here, in contrast, there was evidence in the record that the entire bill for remediation resulted from the FATSO graffiti.

In *Pangan*, the Fourth District held that the court abused its discretion by failing to take into account the time value of money when ordering restitution. (*Pangan, supra*, 213 Cal.App.4th at p. 582.) There, our colleagues noted that having a lump sum payment immediately is valuable, and a trial court cannot arrive at a lump sum payment by simply totaling the

8

amount of the monthly payments.  (*Id.* at p. 581.)  Here, there is no lump sum payment to calculate, and any analogy to the graffiti on the mural is misplaced.  Rather, the trial court relied on the record to conclude that remediating the Endangered Species Mural was entirely tied to the FATSO graffiti.

Accordingly, we affirm the trial court's restitution order.

## DISPOSITION

The trial court's restitution order is affirmed.


VIRAMONTES, J.


WE CONCUR:


GRIMES, Acting P. J.


WILEY, J.

9