Filed 12/12/23  P. v. Mehta CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PRATITI RENEE MEHTA,<br><br>    Defendant and Appellant. | G061521<br><br>(Super. Ct. No. 18WF0972)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Julian W. Bailey, Judge.  Affirmed.

Mahamedi IP Law and Susan Kalra for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Elizabeth M. Renner, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

This is our second opinion in this case. Appellant Pratiti Mehta hit an indigent bicyclist (P.R.) and then fled the scene, leaving him lying injured in the street. A jury convicted her of a hit and run, unsafe operation of a motor vehicle, and other crimes. Mehta appealed from the judgment and, in our previous opinion, we affirmed her conviction.

This second appeal concerns a restitution order. Following a contested hearing, the trial court ordered Mehta to pay P.R. $45,729.57, even though P.R. had already received a civil settlement from Mehta's car insurer. Mehta challenges the restitution order, asserting the court abused its discretion by imposing restitution as a probation condition without her consent, and by entering an excessive restitution award. We reject both arguments and therefore affirm the order.

**FACTS**

One morning in March 2018, Mehta hit P.R. with her Mercedes, causing him to sustain major injuries, including a compound fracture. The entire event was caught on a nearby business's surveillance camera. Mehta did not stop, attempt to assist the victim, or call for help; instead, she drove to work. That afternoon, after learning the police had photographs of her car, she called the police and claimed she had seen a different car hit the bicyclist.

A jury convicted Mehta of a hit and run (Veh. Code, § 20001, subd. (a)), providing false information to a peace officer (*id.*, § 31), unsafe operation of a motor vehicle (*id.*, § 21070), and making an unsafe turning movement (*id.*, § 22107).[1] Mehta appealed from the judgment, and we affirmed her conviction in an unpublished opinion. (*People v. Mehta* (Aug. 11, 2021, G058679).)

---

[1] The trial court later dismissed the final count as a lesser included offense (Pen. Code, § 1385).

2

As noted, this second appeal concerns restitution. Our remaining discussion of the facts will focus on that issue alone.

A few months after the accident, in June 2018, Mehta's car insurance carrier paid P.R. its policy limit of $100,000 to settle his civil claims.[2] Mehta was convicted in June 2019, and the sentencing hearing was held in July.

At the sentencing hearing, the trial court found Mehta was eligible for probation, but it expressed some concerns. Among other things, the court noted P.R. had already "received the policy limit of a hundred thousand dollars from Ms. Mehta's auto insurance carrier," but opined that "this amount is well short of full compensation for his injuries and continuing partial disability"; P.R.'s lawyer likely "took a significant portion of it" for only "a few hours worked"; and P.R. has not "been compensated for his injuries in any significant or meaningful way."[3] The court ultimately continued the sentencing hearing to October.

At the October 2019 sentencing hearing, the trial court sentenced Mehta to two years in state prison, suspended execution of the sentence, and placed her on supervised probation for three years. As conditions of probation, the court ordered Mehta to pay a mandatory state restitution fine of $300, a second mandatory parole revocation restitution fine (which was stayed pending her successful completion of probation and parole), a $40 court operations fee, and criminal conviction assessment fees. The court also imposed various other conditions of probation, such as cooperating with the probation department, not associating with felons, and not owning dangerous weapons. It

---

[2] The People acknowledged as much in their July 2019 sentencing brief, which noted that "Defendant paid restitution [and ] Victim deemed the amount satisfactory."

[3] The record only includes one page of the reporter's transcript from the July 2019 sentencing hearing, so it is unclear what else, if anything, the trial court said about restitution at the hearing.

3

did not mention restitution. Finally, the court explained Mehta's right to petition the court to remove probation conditions and asked Mehta if she accepted probation on those terms; she replied, "Yes, Your Honor."

The trial court then asked if either party wanted to address anything else "before we complete the probation terms." The prosecutor reminded the court that at the last hearing, the court said it planned to impose restitution. The court acknowledged it was required to impose restitution and decided to "retain jurisdiction over that because it seems to be uncertain at this time." When asked for his thoughts, defense counsel agreed it would be "appropriate" and "fair" to have a hearing on whether any expenses were not paid, and he again reminded the court that "$100,000 was paid out." The court responded, "You've been making a big deal of that all along. That's an insurance payment. [¶] . . . [¶] I'm concerned if there's any additional restitution."

The trial court's minutes from the October sentencing hearing note that the court "reserves jurisdiction" on the restitution issue. About two weeks after the hearing, the court added an entry to the minutes nunc pro tunc that Mehta must "[p]ay restitution in the amount as determined by [the] Probation Department as to count(s) 1 [the hit and run charge] plus 10% interest from date of loss per year and administrative fees."

In late 2019, the probation department sent a form letter to P.R. advising that the trial court ordered Mehta to pay restitution and asking for information about his losses. In response, P.R. submitted a request for $33,907.24, consisting of $33,000.00 in legal fees and $907.24 in "legal cost[s]." He also enclosed a letter explaining that he was seeking restitution only for his attorney fees and legal costs, and that although he could have also asked for compensation for lost work and ancillary medical costs, he decided to "cut [his] losses and move on."

In support of his restitution request, P.R. submitted a June 2018 letter from Mehta's auto insurer advising that a $100,000 check had been mailed to P.R's counsel for "full and final settlement of [his] claim against Mehta." He also enclosed a January 2019

4

letter from his attorneys explaining that the "distribution of the settlement proceeds is as follows": $11,822.33 would be withheld to pay off medical liens,[4] $33,000.00 would go toward attorney fees, and $907.24 would go toward legal costs, with the remaining $54,270.43 paid directly to P.R.[5]

At the People's request, the trial court set a hearing to determine the amount of restitution. Before the hearing, the probation department submitted a restitution report recommending that Mehta be ordered to pay $33,907.24 in restitution ($33,000 for attorney fees and $907.24 for legal costs), plus 10 percent interest from the date of loss. The report noted that the probation officer had spoken with Mehta about the restitution requested. Mehta acknowledged restitution was ordered but felt P.R. had asked for an unreasonable amount for attorney fees; she provided no evidence to dispute the recommended amount of restitution.

Mehta filed a brief in opposition to the imposition of restitution, asserting that direct victim restitution in hit and run cases is not allowed under *People v. Martinez* (2017) 2 Cal.5th 1093 (*Martinez*), and further that the amount P.R. requested for attorney fees was unreasonable. She later filed a supplemental brief asserting she had not consented to restitution as a condition of probation.

The People's restitution brief maintained the imposition of additional restitution was not only permitted under *Martinez*, but mandatory under Penal Code

---

[4]     The letter explained that insurance had covered a $92,108.40 bill from OC Global Medical Center and a $1,471.52 bill from CARE Ambulance; $9,822.33 was paid to satisfy a $13,096.44 bill from the Department of Healthcare Services; and the law firm was withholding $2,000 in its client trust account to satisfy any amount owed to West Coast Radiology or other medical providers.

[5]     The letter included a signature line for P.R. to indicate his acknowledgement and approval of the proposed distribution, but the letter is not signed by P.R.

section 1202.4. The People further argued that P.R.'s medical bills totaled $103,930.73,[6] P.R. received $100,000 from Mehta's insurance company, $33,907.24 of that went toward P.R.'s attorney fees and costs, and a good portion also likely consisted of general damages "beyond the specials"; thus, contended the People, Mehta "owes an additional minimum restitution of $3,930.73, and more reasonably a minimum additional $20,000.00, for a **total restitution owing of $57,837.97**," plus "10% interest from the date of loss."

The restitution hearing went forward in May 2022. The trial court began by rejecting Mehta's argument that restitution must be set at zero because she never accepted restitution as a condition of probation, and added it had an obligation to set restitution under the California Constitution. Mehta's counsel argued P.R.'s attorney fees were unreasonable because there was no need to retain counsel, no civil action was ever filed, and the claim never even went to mediation. The court rejected these arguments too, noting P.R. had a "limited ability to care for himself," it would not make sense for him to personally handle settlement negotiations, and P.R.'s attorneys ultimately did negotiate down some of P.R.'s medical bills. The court added that "a one-third contingency fee by an attorney [was not] unconscionable" in this case given the medical bills alone exceeded $103,000.

The trial court therefore set restitution on count 1 (the hit and run) at $45,729.57, plus interest. Although the court did not spell out its math on the record, it appears it calculated this figure by totaling the amounts that had been deducted from the $100,000 settlement to cover P.R.'s attorney fees ($33,000.00), legal costs ($907.24), and

_____

[6] It is unclear how the People reached this sum. As noted above, the letter from P.R.'s counsel explained P.R. had a $92,108.40 bill from OC Global Medical Center and a $1,471.52 bill from CARE Ambulance (both of which were paid by insurance), and a $9,822.33 bill from the Department of Healthcare Services (which P.R.'s counsel negotiated down from $13,096.44). Those sums total $103,402.25, not $103,930.73.

medical liens ($11,822.33). The court then vacated all other fees and assessments or found they had been paid.

The next month, the trial court terminated Mehta's term of probation. Mehta then filed a notice of appeal from the postjudgment restitution order.[7]

## DISCUSSION

Under California law, convicted criminals may be required to pay up to three types of restitution: a restitution fine paid to the state Restitution Fund (Pen. Code, § 1202.4, subds. (b), (e)), direct victim restitution paid directly to the victim (Cal. Const., art. I, § 28, subd. (b)(13)(B); Pen. Code, § 1202.4, subd. (f)), or restitution paid as a condition of probation (Pen. Code, § 1203.1; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1121; *Martinez, supra,* 2 Cal.5th at p. 1100).

We review a trial court's restitution order for abuse of discretion. (*Czirban, supra,* 77 Cal.App.5th at pp. 1063-1064.) "There are two ways to show an abuse of discretion by the trial court. One way is to show the ruling was whimsical, arbitrary, or capricious, i.e., that the trial court exceeded the bounds of reason. [Citation.] The other way is to show the trial court erred in acting on a mistaken view about the scope of its discretion." (*Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 285.)

---

[7] The People contend Mehta forfeited any challenge to restitution as a condition of probation by not challenging it in her original appeal. The People are wrong. (See Pen. Code, § 1237, subd. (b) [criminal defendant may appeal "[f]rom any order made after judgment, affecting the substantial rights of the party"]; *People v. Czirban* (2022) 77 Cal.App.5th 1050, 1057, 1068 (*Czirban*) [defendant can appeal from postjudgment victim restitution order imposed as a condition of probation following his conviction]; *People v. Denham* (2014) 222 Cal.App.4th 1210, 1213–1214 [victim restitution order is separately appealable from judgment of conviction]; *People v. Guardado* (1995) 40 Cal.App.4th 757, 763 [if court reserves jurisdiction to determine restitution and then later enters a restitution order, that order is separately appealable].)

1.    *The Alleged Imposition of Restitution as a Probation Condition Without Consent*

Mehta first contends the trial court abused its discretion by imposing unauthorized restitution. According to Mehta, the court could not have ordered restitution as a condition of probation because Mehta did not consent to restitution as one of her probation conditions, and there was no statutory basis for imposing restitution outside the probation context because *Martinez* prohibits the imposition of direct victim restitution under Penal Code section 1202.4 in hit and run cases. Mehta argues the court abused its discretion because it acted on a mistaken view about the scope of its discretion. We are not persuaded.

We first consider the issue of whether Mehta consented to restitution as a probation condition. "[A] defendant [who] believes the conditions of probation are more onerous than the potential sentence . . . may refuse probation and choose to serve the sentence." (*People v. Olguin* (2008) 45 Cal.4th 375, 379.) Mehta contends she should have been given the choice of whether to serve her sentence or whether to go on probation and pay restitution, and the trial court deprived her of that option.

The record is less than clear as to whether Mehta at least inferentially agreed to pay restitution when she consented to the conditions of her probation in October 2019. On the one hand, Mehta was made aware that the trial court planned to order additional restitution as a probation condition because (1) the court said as much at the initial July 2019 sentencing hearing, and (2) at the continued October 2019 sentencing hearing, the court asked the parties if they wanted to address anything else "before we complete the probation terms," and counsel then discussed restitution. Despite knowing that restitution was on the table, Mehta did not voice any objections to a possible restitution order at that hearing.

On the other hand, the trial court did not actually order restitution at the October 2019 sentencing hearing when it explained and obtained Mehta's consent to the

8

conditions of probation; instead, it reserved jurisdiction on the issue and then several weeks later added a nunc pro tunc entry in the minutes ordering restitution.

Ultimately, however, we need not decide whether Mehta consented to restitution as a probation condition. As the People correctly note, even if Mehta did not consent to restitution as a probation condition, the trial court was required to order direct victim restitution under Penal Code section 1202.4, which mandates "restitution in every case, without respect to whether probation is granted." (*People v. Giordano* (2007) 42 Cal.4th 644, 653 (*Giordano*).) "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (Pen. Code, § 1202.4, subd. (f).) The restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." (*Id.*, subd. (f)(3).) These provisions were enacted to give effect to the California Constitution's mandate that crime victims are entitled to restitution. (See Cal. Const., art. I, § 28, subd. (b)(13)(B); *People v. Lehman* (2016) 247 Cal.App.4th 795, 800.)[8]

Citing our Supreme Court's decision in *Martinez*, Mehta counters that direct victim restitution is never allowed in hit and run cases outside of probation. This argument misconstrues the holding of *Martinez*.

In *Martinez*, the defendant, who was unlicensed and on felony probation, was driving a pickup truck when he collided with a 12-year-old boy riding a scooter; fearing he had violated his probation, he left the scene of the accident. (*Martinez*, *supra*,

---

[8] Indeed, the trial court's reference at the May 2022 restitution hearing to its "constitution[al]" obligation to set restitution suggests the court was ordering direct victim restitution under Penal Code section 1202.4, not restitution as a condition of probation.

2 Cal.5th at p. 1098.) He later pleaded guilty to a hit and run (Veh. Code, § 20001, subd. (a)), and the trial court ordered him to pay over $425,000 (the amount of the boy's bill for his stay in intensive care) in direct victim restitution for injuries the boy suffered as a result of the accident (*Martinez,* at pp. 1097, 1099). The court of appeal found the trial court erred in fixing the restitution amount, and the Supreme Court agreed. (*Id.* at p. 1097.)

The Supreme Court reasoned that direct victim restitution under Penal Code section 1202.4 is only permitted for "'economic loss incurred as the result of the defendant's criminal conduct.'" (*Martinez*, *supra*, 2 Cal.5th at p. 1098 [citing Pen. Code, § 1202.4, subd. (f)(3)].) In that case, the defendant's crime was not the traffic accident itself but rather "was leaving the scene of the accident without presenting identification or rendering aid," so direct victim restitution was only available for any "injuries that were caused or exacerbated by defendant's criminal flight from the scene of the accident." (*Ibid.*; see *id.* at p. 1102 ["'"'the act made criminal'" under the [hit and run] statute '"is not the 'hitting,' but the 'running'"'"'].)

The Supreme Court explained that restitution for injuries resulting from the accident itself was not authorized because the defendant was not found guilty of any crime based on his "being involved in a traffic accident, nor [did] his conviction imply that he was at fault in the accident." (*Martinez*, *supra*, 2 Cal.5th at p. 1098.)[9] Indeed, "[a]t the sentencing hearing, the victim's mother stated that her son had collided with the truck and that the collision was an accident. Defendant reported that the victim hit defendant's vehicle when the victim failed to stop on his scooter. The trial court made no

---

[9] The *Martinez* court noted the trial court could order restitution as a condition of probation. Unlike direct victim restitution under Penal Code section 1202.4, which is limited to economic losses "incurred as the result of the defendant's criminal conduct" (*id.* at subd. (f)(3)), restitution ordered under a court's broader power to impose probation conditions need only be reasonably related to the offense underlying the conviction. (*Martinez*, *supra*, 2 Cal.5th at pp. 1101-1102.)

findings concerning defendant's responsibility for the accident." (*Id.* at p. 1099.)
Further, "even if defendant had been at fault in the accident—and the evidence in the
record [did] not establish that he was," any negligence "would not give rise to an
obligation to make direct victim restitution for injuries" because the collision "involved
no criminal wrongdoing." (*Id.* at pp. 1104-1105.) The court noted that it might have
reached a different result "if the defendant's crimes included an offense, such as reckless
driving (Veh. Code, §§ 23103, 23104) or driving under the influence (*id.*, §§ 23152,
23153), that caused the accident that resulted in the victim's injuries," but the
"[d]efendant in this case was neither charged with nor convicted of such an offense."
(*Martinez,* at p. 1107, fn. 3.)

In this case, by contrast, Mehta was charged and convicted of offenses
based on her causing the accident resulting in P.R.'s injuries. The jury found her guilty
of not only a hit and run (Veh. Code, § 20001, subd. (a)), but also of unsafe operation of a
motor vehicle (*id.*, § 21070) and making an unsafe turning movement (*id.*, § 22107).
Under Vehicle Code section 21070, it is a public offense if a defendant's Vehicle Code
violation "proximately causes bodily injury or great bodily injury, as defined in Section
12022.7 of the Penal Code, to another person." Because the jury found Mehta guilty on
this count, it necessarily found Mehta was at fault for the collision.

In short, unlike in *Martinez*, where there was nothing to suggest the
defendant was at fault, Mehta caused the collision with P.R. and was found guilty of
unsafe operation of a motor vehicle. Accordingly, the trial court in this case could
properly award restitution under Penal Code section 1202.4 for economic losses incurred
as a result of Mehta's unsafe operation of her car. *Martinez* does not compel a different
result.[10]

---

[10] The trial court ordered restitution as to count 1 (the hit and run) in
particular. The court should have instead ordered restitution on count 3 (unsafe operation

11

2.    *Excessiveness of Restitution Award*

Mehta alternatively contends that even if the restitution award was authorized, the trial court nevertheless abused its discretion by entering an excessive restitution award.  Again, we cannot agree.

Penal Code section 1202.4 requires restitution in an "amount that is sufficient to fully reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following:  [¶] . . . [¶] (B) Medical expenses.  [¶ . . . ¶] (G) Interest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court. [and] [¶] (H) Actual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim."  (Pen. Code, § 1202.4, subd. (f)(3).)

"The burden is on the party seeking restitution to provide an adequate factual basis for the claim."  (*Giordano*, *supra*, 42 Cal.4th at p. 664.)  "'[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt.'"  (*People v. Prosser* (2007) 157 Cal.App.4th 682, 686.) "Section 1202.4 does not, by its terms, require any particular kind of proof."  (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542-1543.)  The People can make a prima facie case for restitution based on the victim's testimony, claim, or statement about the amount of his economic losses.  (*People v. Santori* (2015) 243 Cal.App.4th 122, 126 (*Santori*).)

Once the People make that showing, "'the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.'" (*Santori, supra,* 243 Cal.App.4th at p. 126; see, e.g., *People v. Nonaka* (2022) 83 Cal.App.5th 998, 1003 [evidence of what victim paid in attorney fees is prima facie evidence of the loss and shifts burden to defendant to disprove that amount or to seek an offset].)

of a motor vehicle), but that error does not invalidate the entire restitution award.

12

In this case, the documents submitted by P.R.—particularly the June 2018 letter from Mehta's auto insurer regarding the $100,000 settlement and the January 2019 letter from P.R.'s attorneys explaining the "distribution of the settlement proceeds"—constitute prima facie evidence that P.R.'s medical bills totaled $103,930.73 (before insurance and reductions), Mehta's insurer paid $100,000 to settle P.R.'s civil claims against Mehta for the accident, and P.R. only received $54,270.43 of that amount because $11,822.33 was withheld to pay off medical liens, $33,000.00 was withheld for P.R.'s attorney fees, and $907.24 was withheld for legal costs. The burden therefore shifted to Mehta to demonstrate P.R. did not suffer those economic losses. She did not present any evidence to refute those amounts.

Mehta asserts the trial court erred in ordering her to pay $11,822.33 in restitution for P.R.'s medical bills because P.R. did not request restitution for those losses. She notes that P.R.'s letter to the probation department specified he was only seeking restitution for his $33,907.24 in attorney fees and costs, and that rather than seeking compensation for lost work and ancillary medical costs, he decided to "cut [his] losses and move on."

P.R.'s apparent willingness to move on, however, does not eliminate the trial court's statutory obligation to award restitution for medical expenses incurred as the result of the defendant's criminal conduct. (Pen. Code, § 1202.4, subd. (f)(3)(B).) Pursuant to the applicable statute, the amount of restitution must be "based on the amount of loss claimed by the victim or victims *or any other showing to the court*." (*Id.*, subd. (f), italics added.) In this case, the People made an adequate showing that P.R. incurred medical expenses as a result of Mehta's criminal conduct; we discern no abuse of discretion in the inclusion of the $11,822.33 for medical expenses in the restitution award.

13

Mehta also contends the trial court erred by not considering the reasonableness of the restitution award for P.R.'s attorney fees. According to Mehta, the $33,000 contingency fee she paid is "clearly excessive" in light of the time the attorney actually spent on the matter.

Again, we must disagree. Although earlier case law suggested that courts must apply the lodestar method to determine whether attorney fees sought as restitution in criminal proceedings are reasonable (*People v. Millard* (2009) 175 Cal.App.4th 7, 31, 33), recent case law has acknowledged "it is not an abuse of discretion to award restitution for [a contingency] fee without resorting to the lodestar method" (*People v. Taylor* (2011) 197 Cal.App.4th 757, 764; see *People v. Grundfor* (2019) 39 Cal.App.5th 22, 30 [trial court has broad discretion in setting amount of attorney fee restitution and may use any rational calculation method, including a calculation based on a continency fee, so long as the calculation reflects the actual, reasonable fees paid]).

In this case, the trial court's use of the contingency payment was not arbitrary or capricious; it was rational under the circumstances. The court reasoned that because P.R. had a "limited ability to care for himself," it would not make sense for him to handle his own settlement negotiations, and P.R.'s attorneys ultimately did negotiate a reduction of some of P.R.'s medical bills. It also found "a one-third contingency fee by an attorney [was not] unconscionable" given the medical bills alone exceeded $103,000. We find no abuse of discretion.

## DISPOSITION

The restitution order is affirmed.



GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.